Bryon R. WOHLWEND, Appellant–
Defendant,

v.

Donna J. EDWARDS and Michael
Edwards, Appellees–
Plaintiffs.

No. 54A01–0211–CV–460.

Court of Appeals of Indiana.

Oct. 2, 2003.

Matthew C. Robinson, Seth M. Lahn, Yarling & Robinson Indianapolis, IN, Attorneys for Appellant.

Paul S. Kruse, Parr Richey, Obremskey & Morton Lebanon, IN, Attorney for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant–Defendant, Bryon R. Wohlwend, appeals from the trial court's judgment in favor of Appellee–Plaintiffs, Donna J. Edwards and Michael Edwards, in their negligence claim against Wohlwend. Upon appeal, Wohlwend's two presented issues concern only the matter of punitive damages: (1) whether the trial court improperly admitted evidence of Wohlwend's behavior subsequent to the incident giving rise to the Edwardses' claim, and (2) whether the trial court improperly instructed the jury that driving while intoxicated is per se willful and wanton misconduct.

With regard to punitive damages, we reverse and remand.

The record reveals that in the early morning hours of March 11, 2000, the vehicle which Wohlwend was driving crossed the center line of the road and collided head-on with a vehicle driven by Mrs. Edwards. Wohlwend had been drinking and was intoxicated. An open bottle of wine cooler was found in his vehicle. He had also gotten very little sleep in the few days prior to the accident. Mrs. Edwards was injured in the collision. Her arm was injured as a result of bracing herself for the impact. She suffered from pain and discomfort, concentrated in her left arm, head, and chest. She had severe headaches for a week following the accident,

and her chest was bruised for four months. Mrs. Edwards's medical expenses totaled $11,760. As a result of this accident, Wohlwend was arrested and convicted for operating a motor vehicle while intoxicated.

On May 1, 2000, the Edwardses filed suit against Wohlwend. On March 8, 2002, Wohlwend filed a motion in limine seeking to prohibit the Edwardses from presenting certain evidence, including Wohlwend's driving record. The trial court granted the motion. On October 15 and 16, 2002, a jury trial was held. Evidence was admitted at trial which indicated that, prior to the accident involving Mrs. Edwards, Wohlwend had been arrested for possession of marijuana and illegal consumption or possession of alcohol by a minor. The Edwardses also introduced evidence that, subsequent to the Edwards accident, Wohlwend had twice been arrested for operating a vehicle while intoxicated. Specifically, Wohlwend was arrested for operating while intoxicated on June 1, 2000 [1] and again on January 12, 2002.

The trial court granted the Edwardses' motion for a directed verdict on the issue of liability. The jury then resolved the issue of compensatory and punitive damages, awarding Mrs. Edwards $50,000 in compensatory damages, awarding Mr. Edwards $500 in compensatory damages, and assessing punitive damages against Wohlwend in the amount of $100,000. On October 16, 2002, the trial court entered judgment on the verdict and costs for the action.

## I

### Evidence of Subsequent Conduct

Wohlwend claims that the trial court erred in admitting evidence of his behavior which occurred after the incident involving Mrs. Edwards. Wohlwend argues that such evidence was irrelevant to the issue of punitive damages and unfairly prejudicial.

### A. Waiver

■ The Edwardses claim that Wohlwend has forfeited any claim of error with regard to the introduction of this evidence by failing to make a timely objection. It is true that a party may not rely upon a pretrial ruling on the admissibility of evidence to preserve error upon appeal. See Lenoir v. State, 515 N.E.2d 529 (Ind.1987). Wohlwend, however, does not rely upon the trial court's grant of his motion in limine to preserve his error. Instead, Wohlwend objected at trial immediately prior to the admission of the evidence in question, which was adduced during the direct examination of Wohlwend by counsel for the plaintiffs.

Wohlwend first objected when plaintiffs' counsel asked if he had a "chemical dependency problem." Transcript at 237. Wohlwend argued that the plaintiffs were attempting to introduce improper character evidence. This objection was overruled. Wohlwend again objected when plaintiffs' counsel attempted to adduce testimony revealing that Wohlwend had a prior arrest for underage drinking, which the trial court also overruled. After this, Wohlwend testified that, prior to the accident with Mrs. Edwards, he had been arrested for possession of marijuana and underage possession and consumption of alcohol. Although Wohlwend does not challenge the admission of this evidence upon appeal, this line of questioning led to the admission of the evidence at issue. Wohlwend was then asked, "Did your arrest in this matter for the charge of Driv-

1. On August 30, 2000, Wohlwend was convicted as a result of the June 1, 2000 arrest and the charge stemming from the collision with Mrs. Edwards.

ing While Intoxicated, when you were in the collision with Mrs. Edwards, serve as a lesson to you, or deter you from doing this again?" *Id.* at 242–43. Wohlwend's counsel immediately objected and was granted a request that the jury be removed from the courtroom. Wohlwend's counsel then stated that the court should not allow any evidence of Wohlwend's subsequent convictions for drunken driving, citing Evidence Rule 404 and claiming that such would be "extremely prejudicial" and irrelevant. Transcript at 243–44. The Edwardses' counsel countered that, although Wohlwend's subsequent conduct was irrelevant to the issue of compensatory damages, it was relevant to the issue of punitive damages. After further discussion, the trial court stated, "I'm going to rule that plaintiff may pursue the line of questioning. I will instruct the jury, at this point, that they may only consider the evidence as to the defendant's acts, subsequent to March 11, 2000, for the limited purpose of whether to award punitive damages." *Id.* at 247. Wohlwend's counsel then moved for a mistrial upon grounds that the evidence was irrelevant, violated Evidence Rule 404(a), and its probative value was outweighed by its prejudicial effect. This motion was denied, and the jury was brought back into the courtroom and instructed to only consider the acts subsequent to the accident involving Mrs. Edwards "for the limited purpose of whether to award punitive damages in this case." *Id.* at 248.

After this extensive objection and discussion, we cannot fault Wohlwend's counsel for not repeating his already-stated and overruled objection when the testimony concerning the subsequent acts came

into evidence immediately thereafter. The purpose of requiring a trial objection is so that any error might be corrected by the trial court at that time. *Lenoir,* 515 N.E.2d at 529. Here, that purpose was fulfilled by Wohlwend's timely objection and motion for mistrial.

### B. Evidence of Subsequent Conduct in Determining Punitive Damages

As stated, the essence of the issue before us is whether the trial court should have admitted evidence of Wohlwend's behavior after the event giving rise to the Edwardses' claim even if limited to the matter of punitive damages. This appears to be an issue of first impression in Indiana.

Punitive damages in civil cases are governed by Indiana Code 34–51–3. *See* Ind.Code § 34–51–3–1 (Burns Code Ed. Repl.1998). The standard used to determine whether punitive damages are properly awarded is whether, considering only the evidence and reasonable inferences supporting the judgment, a reasonable trier of fact could find by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence,[2] or oppressiveness which was not the result of a mistake of fact or law, mere negligence, or other human failing. *INS Investigations Bureau, Inc. v. Lee,* 784 N.E.2d 566, 582 (Ind.Ct.App.2003), *trans. denied.* *See also* Ind.Code § 34–51–3–2 (Burns Code Ed. Repl.1998). The purpose of punitive damages is not to make the plaintiff whole or to attempt to value the plaintiff's injuries; instead, the purpose is to deter and punish wrongful activity. *Cheatham*

---

**2.** Use of the term "gross negligence" is inappropriate in Indiana because our common law does not recognize degrees of negligence. *Wilshire Servicing Corp. v. Timber Ridge P'ship,* 743 N.E.2d 1173 (Ind.Ct.App.2001), *trans denied.* In the context of punitive dam-

ages the more appropriate term would seem to be "willful and wanton misconduct." *See Miner v. Southwest School Corp.,* 755 N.E.2d 1110, 1113 (Ind.Ct.App.2001). See also discussion under Part II B., *infra.*

*v. Pohle,* 789 N.E.2d 467, 471 (Ind.2003). *See also Lee,* 784 N.E.2d at 582 (punitive damages are designed to punish the wrongdoer and discourage him and others from similar conduct in the future). Moreover, civil plaintiffs have no right to receive punitive damages. *Cheatham,* 789 N.E.2d at 471.

Our General Assembly has limited the amount that may be recovered as punitive damages to no more than the greater of three times the amount of compensatory damages or fifty thousand dollars. Ind. Code §§ 34–51–3–4, 34–51–3–5 (Burns Code Ed. Repl.1998). Pursuant to Indiana Code § 34–51–3–6 (Burns Code Ed. Repl. 1998), when punitive damages are awarded in civil actions, the party against whom the judgment was entered shall pay the punitive damage award to the clerk of the court where the action is pending. Upon receiving the payment, the clerk must then pay the plaintiff twenty-five percent of the award and pay the remaining seventy-five percent to the Treasurer of State who is to deposit the funds into the violent crimes compensation fund. *Id.*

Here, Wohlwend claims that evidence of his acts subsequent to the accident involving Mrs. Edwards was irrelevant to the issue of punitive damages in connection with that accident. The Edwardses claim that this evidence is relevant to the purpose of punitive damages—to deter similar conduct. We are unwilling to say that, in a case involving punitive damages, post-incident acts could never be relevant to the issue of punitive damages in conjunction with the incident giving rise to the plaintiff's claim. We can envision a rare situation in which the acts of the defendant subsequent to the incident at issue might bear some relevance to the culpability of

the defendant and the related question of whether or not to impose punitive damages or in what amount they should be imposed.[3] Be that as it may, this does not mean that such evidence, even if relevant, is necessarily admissible. Although evidence must be relevant to be admissible, *see* Ind. Evidence Rule 402, not all relevant evidence is admissible. Evidence Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. In the case at bar, we need not decide whether and to what extent the evidence of Wohlwend's subsequent acts of drunken driving are relevant to the issue of punitive damages, for to the extent that such evidence could possibly be relevant, its probative value is substantially outweighed by the danger of unfair prejudice.

When the jury heard evidence of Wohlwend's subsequent driving record, there was a danger that it would punish Wohlwend for his subsequent acts and not for his behavior vis-à-vis Mrs. Edwards. One might argue that, if punitive damages are to be fully effective in their purpose, the jury should be able to punish Wohlwend for his subsequent driving record in addition to the incident involving Mrs. Edwards. This follows from the proposition that a recidivist is worthy of greater punishment than a one-time offender. However, we conclude that such evidence would run afoul of the requirement that punitive damages be connected to and proportional to the actual, compensatory damages suffered by the plaintiff. The requirement of a connection between compensatory and

---

**3.** For example, such evidence might in some limited circumstances be relevant to the state of mind of the defendant at the time of the incident involving the plaintiff. Indeed, this is part of the Edwardses' argument.

punitive damages manifests itself in several ways.

It has long been the law in our state that compensatory damages are a prerequisite to the recovery of punitive damages. *See e.g., Sullivan v. Am. Cas. Co.,* 605 N.E.2d 134, 140 (Ind.1992); *Newton v. Yates,* 170 Ind.App. 486, 495, 353 N.E.2d 485, 491 (1976), *trans. denied.* Thus, no matter how worthy of punishment the behavior of the defendant and the need to deter such, without actual damages suffered by the plaintiff, no punitive damages will be permitted. Our General Assembly has further tied punitive damages to the actual injuries suffered by the plaintiff by capping punitive damages at the greater of fifty thousand dollars or three times the compensatory damages of the plaintiff. *See* I.C. §§ 34–51–3–4, 34–51–3–5. If incidents unrelated to the plaintiff's actual damages were before the jury, there is an increased chance that the jury would base its award on something unrelated to compensatory damages, which would run counter to the purpose of this statute of keeping punitive damages connected to and proportional with compensatory damages.

We also cannot ignore the recent developments in the law in the area of punitive damages and constitutional due process protections. In *State Farm Mut. Auto. Ins. Co. v. Campbell,* —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), the insureds brought suit in Utah against their insurer as a result of the insurer's failure to settle a claim within policy limits. The jury awarded compensatory damages of $2.6 million and punitive damages of $145 million. The trial court reduced the compensatory damages to $1 million and the punitive damages to $25 million. The Utah Supreme Court reinstated the $145 million amount. The United States Supreme Court granted certiorari and reversed the Utah Supreme Court.

In *Campbell,* the Supreme Court broadened the due process protections afforded to defendants seeking review of large punitive damages awards. Upon a claim that the amount of punitive damages awarded constitutes a deprivation of property without due process of law in violation of the Fourteenth Amendment, courts are to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) *the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages awarded;* and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* at 1520 (citing *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). *Accord Stroud v. Lints,* 790 N.E.2d 440, 442 (Ind.2003). Thus, some connection and proportionality between the amount of punitive damages and the plaintiff's actual damages are required not only by Indiana law, but are also mandated by the federal Constitution.

The *Campbell* court stated that the Utah courts had erred by punishing State Farm for acts which occurred outside of Utah and which were lawful where they occurred. 123 S.Ct. at 1522–23. More relevant to the issue before us, the Court stated, "a more fundamental reason" that the Utah courts had erred was that they had "awarded punitive damages to punish and deter conduct *that bore no relation to the [plaintiffs'] harm."* *Id.* at 1523 (emphasis supplied). The Court recognized that a factor in punitive damages is the reprehensibility of the defendant's conduct, and that in determining reprehensibility it is proper to consider whether the conduct involved repeated actions or was an isolated incident. *Id.* Nevertheless, the Court was concerned about the bounds of this reprehensibility analysis, stating:

"A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis.... Punishment on these bases creates the possibility of multiple punitive damage awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains." *Id.*

We recognize that the Court spoke of "dissimilar" acts, and it appears that in the case at bar, the acts were not wholly dissimilar. Immediately following this, however, the court stated in no unspecific terms that the defendant should be punished for the conduct which harmed the plaintiff, and warned against adjudicating hypothetical claims which others might bring. This is one of our chief concerns with allowing evidence of Wohlwend's subsequent conduct. If the jury were to punish Wohlwend for his subsequent acts in addition to the conduct which harmed Mrs. Edwards, there would be a risk of multiple punishment. In future suits based upon this subsequent conduct, Wohlwend could conceivably be punished yet again for the acts which were taken into consideration in punishing him in the previous trial.

The Court also stated that, although a recidivist may be punished more severely than a first offender, in the context of civil actions, courts must ensure the conduct in

question "replicates the *prior* transgressions." *Id.* at 1523 (emphasis supplied). This suggests the Court was considering that past instances of misconduct might be relevant to the reprehensibility of the defendant, but nowhere did it imply that future conduct was relevant.

■ We conclude that any relevance which Wohlwend's subsequent acts could have had upon the issue of punitive damages was substantially outweighed by the danger that the jury would use this evidence to punish Wohlwend for his subsequent acts instead of the conduct which gave rise to the Edwardses' actual damages. For the jury to punish Wohlwend for such subsequent conduct would detach the propriety and/or amount of punitive damages from the compensatory damages due the plaintiffs. This would be violative of the spirit of Indiana common and statutory law and the Due Process Clause of the Fourteenth Amendment.

Our conclusion is similar to that reached by the Ohio Supreme Court in *Cappara v. Schibley*, 85 Ohio St.3d 403, 709 N.E.2d 117 (1999). In *Cappara*, the situation was similar to that before us. The plaintiff Cappara was injured in a hit-and-run accident involving the defendant Schibley. Part of the plaintiff's theory was that Schibley was driving while intoxicated at the time of the accident. Schibley filed a motion in limine seeking to exclude evidence of his prior and subsequent convictions for driving under the influence of alcohol. The trial court ruled that evidence of Schibley's subsequent acts of drunken driving would be admissible as to the issue of punitive damages.[4] *Id.* at 119, 709 N.E.2d 117. Upon appeal, the Ohio Court of Appeals reversed the trial court, holding that it was " 'impossible to show

---

4. The trial court disallowed the evidence of subsequent conduct as to the claim of negli-

gent entrustment brought against the defendant's employer. *Id.* at 119.

malice, i.e., a defendant's state of mind and/or conscious disregard, with occurrences which were subsequent in time to the event from which the negligence arose. This issue merits no further discussion.'" *Id.* The Ohio Supreme Court agreed and held that evidence of a defendant's subsequent driving record was inadmissible to prove the defendant's state of mind at the time of the earlier accident because such evidence was irrelevant and highly prejudicial. *Id.* at 121 (citing Ohio Evidence Rules 401 and 403).

A similar result was reached in *Thomas v. Am. Cystoscope Makers, Inc.*, 414 F.Supp. 255 (E.D.Pa.1976), wherein a physician sought punitive damages against a surgical equipment maker. The jury returned a verdict in favor of the plaintiff, awarding $475,000 in compensatory and $200,000 in punitive damages. The defendants moved for a judgment n.o.v., arguing in part that the punitive damages award was in error. The District Court, applying Pennsylvania law, noted that punitive damages must bear a reasonable relationship to the amount of actual damages suffered. *Id.* at 264. The court further noted that this necessarily limited the relevance of the plaintiff's proffered evidence, which included injuries to others which had occurred after the plaintiff's injuries. The *Thomas* court stated that, for such reasons, it had limited plaintiff's proof at trial to "'conduct vis-a-vis the plaintiff' or[,] in other words, to facts and circumstances up until the time of plaintiff's injury." *Id.* The court rejected the plaintiff's notion that evidence of subsequent conduct might be relevant to the defendant's state of mind at the time of the incident involving the plaintiff, stating, "To allow evidence of defendant's subsequent conduct presents the distinct opportunity for the imposition of punitive damages for conduct that may have no connection whatsoever with the injured plaintiff, contrary to what we take

to be the settled law." *Id.* at 265. Therefore, the court held that evidence of the defendant's conduct after the plaintiff's injuries was not relevant to the issue of punitive damages and properly excluded at trial, and would not be considered in assessing the propriety of punitive damages in the motion for judgment n.o.v. *Id.* *See also Hoffman v. Sterling Drug Inc.*, 374 F.Supp. 850 (M.D.Pa.1974) (in a pharmaceutical product liability case involving punitive damages, evidence was limited to that involving the impact upon plaintiff, not society as a whole, because Pennsylvania law required a reasonable relationship between compensatory and punitive damages); *Morningstar v. Hoban*, 55 Pa. D. & C.4th 225 (Pa.Comm.Pl.2002) (explaining that the holding in *Thomas* does not act as a bar to any evidence of post-accident conduct, but instead requires the evidence be connected to the plaintiff).

We do not find persuasive the holding of the Georgia Supreme Court in *Moore v. Thompson*, 255 Ga. 236, 336 S.E.2d 749 (1985), cited by the Edwardses. In *Moore*, the plaintiff Thompson was injured when he was struck by a vehicle driven by defendant Moore. The issue before the court in *Moore* was whether, in a suit arising out of the use of an automobile in which the cause of injury is alleged to be driving while intoxicated, evidence is admissible on the issue of punitive damages that the defendant had pleaded guilty to driving while intoxicated twice before and twice after the accident involved. The *Moore* court held that such subsequent conduct was relevant in that injuring another in a subsequent incident is an aggravating circumstance which would authorize the awarding of punitive damages. *Id.* at 751. The *Moore* court was not unaware of the prejudicial effect this could have in determining liability, and for this reason held that trial courts should bifurcate the

trial in such a case and determine liability and punitive damages separately.[5] *Id.*

Unlike the *Moore* court, we are not concerned merely with the prejudicial effect evidence of subsequent conduct might have upon the jury in determining liability. Such evidence is also unfairly prejudicial to the defendant in determining the propriety and amount of punitive damages vis-à-vis the current plaintiff. As stated previously, the position advocated by the Edwardses would increase the likelihood that the defendant would be punished for conduct unrelated to the plaintiff's actual damages, which would run counter to Indiana law and the Due Process Clause of the Fourteenth Amendment.

We therefore conclude that the trial court erred in permitting evidence of Wohlwend's post-accident conduct to come before the jury.[6] *Cf. Duncan v. Duncan,* 764 N.E.2d 763 (Ind.Ct.App.2002) (upon appeal from summary judgment, court would not consider affidavit from mother of defendant containing unsworn and uncertified copies of police records pertaining to motor vehicle violations by defendant both before and after the accident involving plaintiff because, among other reasons, such evidence was inadmissible pursuant to Evid. R. 404(b)), *trans. denied; Wanke v. Lynn's Transp. Co.,* 836 F.Supp. 587 (N.D.Ind.1993) (in suit seeking punitive damages against driver's employer after

driver caused death of plaintiff's husband, evidence of driver's driving behavior occurring after the collision with decedent proved nothing about employer's knowledge or mental state before the collision).

■ The Edwardses claim that, even if this evidence was erroneously admitted, such was harmless error which would not require reversal. We cannot agree. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Ind. Evidence Rule 103(a); *Marchal v. Craig,* 681 N.E.2d 1160, 1163 (Ind.Ct.App. 1997). In determining whether evidentiary error requires reversal, we assess the probable impact upon the trier of fact. *Id.* In the present case, not only was there a possibility that the jury based its award of punitive damages upon conduct other that than which damaged the plaintiff, it was a near certainty. The jury was encouraged to do just that. In addressing the jury during closing arguments, the Edwardses' counsel stated:

> "I mean, at what point do we, do we turn that around and say wait a minute, you know, you [i.e., the defendant] are responsible. You do have to be accountable for that. I'm not going to give you the benefit of the doubt, you messed up, you need to pay for it. You not only messed up

---

5. In *Webster v. Boyett,* 269 Ga. 191, 496 S.E.2d 459 (1998), the Georgia Supreme Court recognized that the procedure endorsed in *Moore* had been altered by the Georgia Tort Reform Act of 1987, which mandated a different bifurcation procedure where the jury first decides whether to award punitive damages and then reconvenes to decide the amount to award. *See Webster,* 496 S.E.2d at 461. The *Webster* court held that, in the absence of the statutory change, it would adhere to its previous decision in *Moore. Id.* at 462. Faced with this statutory change, the *Webster* court concluded that trial courts could, at their discretion, follow the bifurcation procedure

set forth in the statute, or require trifurcation, where the jury would determine liability and compensatory damages in the first phase, liability for punitive damages in the second, and the amount of punitive damages in the third. *Id.* at 461, 463–64.

6. We also note that our situation is different than that present in *Perry v. Leo P. Knoerzer Corp.,* 472 N.E.2d 223 (Ind.Ct.App.1984), *trans. denied,* where it was a series of related events involving the plaintiff which was at issue.

but you messed up a whole bunch. You know, don't we at some point have a little sense of anger about having to worry about driving down the road, that somebody who's not learned their lesson by the third time, or the fourth time, or the fifth time, is still out there driving a car?" Transcript at 348.

■ Because we are unable to say that the trial court's error was harmless, we reverse the trial court's judgment as to punitive damages. We note, however, that Wohlwend does not challenge the trial court's directed verdict against him upon the issue of liability, nor does he challenge the award of compensatory damages. Upon remand, the only issue to be retried is that of punitive damages.

## II

### *Jury Instruction*

We have concluded that we must reverse the judgment of the trial court and remand for a new trial upon the issue of punitive damages, and the issue as to whether the trial court properly instructed the jury regarding punitive damages need not be resolved. However, we address this issue because it is likely to recur upon remand. Wohlwend claims that the trial court erred in giving the jury final instruction number sixteen. Before we reach the merits of this argument it is necessary to address the Edwardses' contention that Wohlwend has waived this issue for purposes of appellate review.

### A. *Waiver*

According to the Edwardses, Wohlwend waived any argument regarding this instruction by failing to comply with that portion of Indiana Trial Rule 51(C) which states, "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider

its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The Edwardses claim that Wohlwend made no objection to the challenged instruction until after the jury had been instructed and deliberations were completed. Wohlwend responds by claiming that, although he did not formally record his objection until after the jury had been charged, the instruction had been objected to earlier off the record, "in accordance with customary practice in courts across Indiana." Appellant's Reply Br. at 8.

This practice was given tacit approval in *Piwowar v. Washington Lumber & Coal Co.*, 405 N.E.2d 576 (Ind.Ct.App.1980), in which the appellant contended that the trial court erred by not giving counsel the opportunity to make objections to jury instructions until after the case had been submitted to the jury. The *Piwowar* court, citing T.R. 51(C), noted that the trial court had properly permitted counsel to make objections to the instructions before they were given, but because the court reporter was not available at the time, the objections were not recorded until after the jury retired. *Id.* at 582. The court observed, "Although this is not the preferred procedure, it has not created reversible error. Counsel was given the opportunity to make a timely objection." *Id.*

The same argument was made in *Manning v. Allgood*, 412 N.E.2d 811 (Ind.Ct. App.1980). Upon appeal, the court noted that a conference had been held to discuss jury instructions, at which time both parties were given the opportunity to tender instructions, object to instructions, and argue the issues. For the sake of convenience and expedience, the previously made objections were not recorded until after the jury had begun deliberations. Citing T.R. 51(C) and *Piwowar*, the court stated

that, although not the preferred procedure, such did not give rise to reversible error. *Manning*, 412 N.E.2d at 814. "The purpose of TR.[sic] 51 is to guarantee counsel the opportunity to make timely objections and to advise both the trial court and the adverse party of the basis for the objection so as to afford the opportunity to correct any error at the trial court level." *Id.* (citing *Murphy v. Ind. Harbor Belt R.R. Co.*, 154 Ind.App. 103, 118, 289 N.E.2d 167, 177 (1972)). The court held that, so long as this purpose is fulfilled, the technical failure to formally record the objections until after the jury had retired does not create reversible error. *Id.*

 Here, the record supports Wohlwend's contention that the objection had been previously made but was not formally recorded until later. Speaking of the final instructions, the trial court asked, "if there are any objections[,] do you wish to make them now or a little bit later?" Transcript at 335. Wohlwend's counsel stated, "I would prefer later, if that's okay." *Id.* Notably, the Edwardses' counsel stated, "No objections to doing that." *Id.* Then, before reading the instructions to the jury, the trial court addressed the jury saying, "in the time while you've been gone then the Court has settled the final instructions with counsel. In other words, they both had the opportunity to tender to the Court, proposed instructions as to the law, and *we have had discussion and debate and arrived at some final instructions that you will hear.*" *Id.* (emphasis supplied). From this, it is apparent that the parties had made their objections known to the trial court before the instructions were read to the jury. This conclusion is also supported by the manner in which the recorded objection was made. Wohlwend's counsel stated, "Judge, just briefly, could I make my one objection to the

Court's final instruction, *so we have this on the record.*" *Id.* at 374, 289 N.E.2d 167 (emphasis supplied). In explaining the objection, Wohlwend's counsel said, "The defendant *had* an objection to Court's Final Instruction No. 16." *Id.* (emphasis supplied). Because this procedure is not reversible error pursuant to *Piwowar* and *Manning,* neither should it result in waiver of the objection inasmuch as the purpose behind T.R. 51 has been satisfied. *See also Southport Little League v. Vaughan,* 734 N.E.2d 261, 274 n. 9 (Ind.Ct. App.2000) (in addressing whether objection to jury instruction had been properly preserved, court observed in footnote that the trial court and parties had agreed to place objections to jury instructions on the record after the jury had retired), *trans. denied.*

## B. Propriety of the Instruction

 The jury instruction at issue in the present case reads:

> "The law holds an intoxicated person to the same standard of care as a sober person. Intoxication is not an excuse for failure to act as a reasonably careful person would act. *Operating a motor vehicle upon a public highway while intoxicated constitutes willful and wanton misconduct.*" Appellant's Appendix at 21 (emphasis supplied).

Punitive damages may be properly awarded upon a showing of willful and wanton misconduct. *Lee, supra,* 784 N.E.2d at 582. Wohlwend claims that the emphasized portion of this instruction is an incorrect statement of the law in that it states that driving while intoxicated is per se willful and wanton misconduct. When reviewing a claim that a jury instruction is an incorrect statement of the law, our review is de novo. *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893–94 (Ind.2002), *reh'g denied.*

Wohlwend's claim relies upon *Andert v. Fuchs,* 271 Ind. 627, 394 N.E.2d 931 (1979). In *Andert,* the question before the court was whether the defendant's conduct constituted willful and wanton misconduct within the meaning of the Indiana Guest Statute.[7] Justice Prentice, writing for the court, stated that to hold a defendant guilty of willful or wanton misconduct, it must be proved that the defendant "was conscious of his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries." 271 Ind. at 629, 394 N.E.2d at 933 (quoting *Bedwell v. DeBolt,* 221 Ind. 600, 607, 50 N.E.2d 875, 878 (1943)). The court further held that it was incumbent upon the plaintiff to prove that the defendant consciously and intentionally, with a perverse motive, or reckless indifference as to the consequences, operated his vehicle improperly under known existing conditions. 271 Ind. at 630, 394 N.E.2d at 934. More importantly, the court wrote:

"Without question driving in a state of intoxication upon snow covered roads, when increased care is required, is negligence. But is it wanton or willful misconduct, as those terms have been heretofore defined by this Court? We think not, for the reason that the mental attitude of perverseness or conscious indifference are not reasonably inferable there-from. Intoxication combined with evidence of other misconduct, such as speeding, driving on the wrong side of the road or violating other traffic regulations, heightens the inference of willfulness or wantonness that may be drawn from such circumstances, but here there was no such evidence." 271 Ind. at 631–32, 394 N.E.2d at 934.

Justices Hunter and Pivarnik concurred, but Chief Justice Givan and Justice DeBruler dissented without opinion.

The Edwardses rely upon *Williams v. Crist,* 484 N.E.2d 576 (Ind.1985), in which the holding of *Andert* was brought into question. In *Williams,* the question before the court was again whether the defendant's conduct of driving while intoxicated by itself was sufficient to show willful or wanton misconduct per the Guest Statute. The defendant cited *Andert, Roberts v. Chaney,* 465 N.E.2d 1154 (Ind.Ct.App.1984), and *Keck v. Kerbs,* 182 Ind.App. 530, 395 N.E.2d 845 (1979), for the proposition that intoxication must be combined with some other misconduct such as speeding or driving on the wrong side of the road or the violation of other traffic regulations to bring it within the willful or wanton conduct category. Chief Justice Givan, writing for himself and Justice Pivarnik, disagreed with these holdings and noted at length the

---

7. The Guest Statute at that time read in part: "The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the *wanton or wilful misconduct* of such operator, owner, or person responsible for the operation of such motor vehicle." *Andert,* 271 Ind. at 628, 394 N.E.2d at 932–33 (quoting Ind.Code § 9–3–3–1 (1971)) (emphasis supplied). For the current Guest Statute, see Ind.Code § 34–30–11–1 (Burns Code Ed. Repl.1998).

seriousness of the societal problem of driving while intoxicated:

"To the extent that the above-cited cases may be interpreted as contrary to the holding herein, *they are expressly overruled.* Judge Ratliff, who dissented in the case at bar, also dissented in *Roberts, supra.*

* * *

As Judge Ratliff points out, the drunken driver is a major source of property damage and personal injury in the United States today. The drunken driver kills more citizens each year than any other group of criminals. As Judge Ratliff notes, in 1980, approximately 26,-300 persons were killed in the United States by drunken drivers. *Roberts, supra* at 1161 (Ratliff, J., dissenting). We heartily agree with the statement made by Judge Ratliff in his dissent in *Roberts* that '[d]riving a motor vehicle while intoxicated thereby endangering one's guest rider is wanton and willful misconduct *per se* and it is high time we said so.' *Id.*

Probably because the consumption of alcoholic beverages is so widespread and generally accepted as a recreational pastime, legislators, juries and judges, both trial and appellate, have too often treated the problem in a cavalier manner. As Judge Ratliff says, it is high time we publicly state that the intoxicated driver is guilty of willful and wanton misconduct when he deliberately assumes control of an automobile and places it upon a public highway." 484 N.E.2d at 578 (emphasis supplied).

Although this would seem to be a death knell to the holding in *Andert,* then Justice Shepard, joined by Justice DeBruler, wrote a separate opinion concurring in result with the plurality's opinion. According to this concurring opinion, the evidence

adduced at trial was adequate to meet the standard set forth in *Andert,* and there was therefore no need to announce a new standard or overrule prior precedent. *Id.* at 579 (Shepard, J., concurring in result).

Justice Prentice wrote a dissenting opinion in which he stated:

"Driving while under the influence of alcohol is, in my judgment wanton and willful but the undisputed evidence was that Williams' driving was unimpaired. I regard the verdict and the acceptance of transfer and affirmance by this Court as nothing less than a determination that the ingestion of alcohol and driving a motor vehicle shortly thereafter is conduct that society should not tolerate and that holding an offender liable in damages, without regard to a casual [sic] connection between the two, will serve as a deterrent. Neither do I have any quarrel with the establishing of such a policy. However, such is the exclusive prerogative of our legislature.

I vote to deny transfer upon the authority of *Andert* [ ]." *Id.* (Prentice, J., dissenting).

Thus, despite the fact that the *Williams* plurality "expressly overruled" *Andert,* only two Justices voted to do so. The two Justices who concurred in result relied upon *Andert* and would not have overruled it. Justice Prentice, although apparently agreeing to some extent with the public policy concerns underlying the plurality's holding, dissented upon the bases of the holding in *Andert.* Notwithstanding the statement in *Williams* to the contrary, the lead opinion in *Williams* simply did not have the votes to overrule *Andert.* This has not stopped several subsequent cases from citing and relying upon the lead opinion in *Williams.*

In *State v. Garcia,* 489 N.E.2d 168 (Ind. Ct.App.1986), *trans. granted,* the First

District of this court upheld the constitutionality of roadblocks. Although admitting that the *Williams* case was not directly on point, the court quoted that portion of the plurality opinion in *Williams* which noted the seriousness of the problem of drunken driving and which held that such was per se willful and wanton misconduct. Our Supreme Court granted transfer in *Garcia*, vacating the opinion, but agreeing with the result reached by the First District. *State v. Garcia*, 500 N.E.2d 158, 159 (Ind.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987). The opinion upon transfer, however, makes no mention of *Williams*.

The *Williams* case was more thoroughly discussed in *Obremski v. Henderson*, 487 N.E.2d 827 (Ind.Ct.App.1986), *trans. granted*, wherein the First District of this court was faced with the question of whether proof of a driver's intoxication at the time of an automobile accident supported an inference that the driver was acting "recklessly" within the meaning of Ind.Code § 35-41-2-2.[8] The plaintiff in *Obremski* cited the lead opinion *Williams* for the proposition that driving while intoxicated was per se willful and wanton misconduct. The court noted the confusion surrounding *Andert* and *Williams*. *Id.* at 831. Nevertheless, the court stated "we agree with the statements expressed by the plurality opinion of Justice Givan, and until there is a contrary manifestation we shall apply it." *Id.*

Our Supreme Court granted transfer in *Obremski*, vacating the First District's opinion, but agreeing with the Court of Appeals that an intoxicated driver whose deficient driving causes a collision may be held liable for treble damages. *Obremski*

v. *Henderson*, 497 N.E.2d 909, 910 (Ind. 1986). The Court stated:

"A driver whose behavior on the road meets every standard of conduct, who observes the speed limit, stays in his lane, turns properly, and so on, is not liable for damages because nothing in his behavior has been the proximate cause of the collision. *Intoxication by itself does not change his behavior to one which 'caused' the collision.* Similarly, a driver whose acts suggest only negligence is not 'reckless.' On the other hand, *a drunk driver who crosses the center lane and strikes another car could well be found by a jury to have acted 'in plain, conscious, and unjustifiable disregard of the harm that might result.' A majority of the Court has concluded that such behavior by a drunk driver would constitute 'wanton and willful' misconduct. Williams v. Crist[.]" Id.* at 910-11 (citations omitted) (emphasis supplied).

Although citing to *Williams*, the *Obremski* Court did not hold that drunken driving was per se reckless or willful and wanton misconduct. Instead, the Court held that conduct by a drunk driver such as crossing the center lane and striking another car would constitute willful and wanton misconduct—which was effectively the holding of *Andert* and the concurring opinion in *Williams*.

In *Davis v. Stinson*, 508 N.E.2d 65 (Ind.Ct.App.1987), *trans. denied*, the Fourth District of this court held that driving while intoxicated acted as a complete defense to an action brought by an intoxicated driver against a social host if the driver's operation of an automobile while intoxicated proximately contributed

---

**8.** This was relevant because the plaintiff in *Obremski* claimed that the defendant's drunken driving at the time of the accident constituted criminal mischief which would permit

the plaintiff to recover treble damages under Ind.Code § 34-4-30-1, now Ind.Code § 34-24-3-1. *Obremski*, 487 N.E.2d at 830.

to the driver's injuries or death. In support of this holding, the *Davis* court cited *Williams* for the statement that driving while intoxicated constitutes willful and wanton misconduct as a matter of law. *Id.* at 67. Although the *Davis* court parenthetically noted the split in the *Williams* court, it relied upon the lead opinion in *Williams* to support its conclusion.

In *Kolkman v. Falstaff Brewing Corp.*, 511 N.E.2d 478 (Ind.Ct.App.1987), *trans. denied*, the Fourth District was faced with the question of whether driving while intoxicated constituted willful and wanton misconduct sufficient to bar an intoxicated driver's action to recover damages from the social host who furnished alcohol to him. The *Kolkman* court cited to *Williams* for the proposition that driving while intoxicated is per se willful and wanton misconduct, without noting the questionability of the plurality holding therein. *Id.* at 479–80.

The Fourth District again cited *Williams* in *Nat'l Mut. Ins. Co. v. Eward*, 517 N.E.2d 95 (Ind.Ct.App.1987), wherein the insurer claimed that, because the insured was intoxicated at the time he struck another driver with his vehicle, the collision was not an accident, i.e., unintentional or unexpected. Although the court did state that *Williams* held that evidence that a driver was intoxicated at the time of an accident is sufficient to show willful or wanton misconduct within the meaning of the Guest Statute, the *Eward* court refused to "find that the liability standard for the purposes of the Guest Statute should be the same as the contractual standard under which [the insurer] can

enforce an exclusion [to coverage]." *Id.* at 100. *See also Integon v. Singleton*, 795 N.E.2d 511 (Ind.Ct.App. 2003) (following *Eward* and parenthetically citing *Williams* as holding that evidence that driver was intoxicated is sufficient to show willful or wanton misconduct within the meaning of the Guest Statute).

In *Szabo v. Cwidak*, 558 N.E.2d 855 (Ind.Ct.App.1990), *trans. denied*, the Third District cited *Davis, supra*, and *Williams*. The *Szabo* court stated that the holding in *Davis* barred recovery from a party who negligently entrusted a vehicle to a driver who was intoxicated, if the driver's operation of the automobile while intoxicated proximately contributed to his injuries or death since the intoxicated person's action in driving the automobile constitutes willful and wanton misconduct. *Id.* at 857. The *Szabo* court cited *Davis* and *Williams*, but *Davis* in turn relied upon the lead opinion in *Williams*.

In *Booker, Inc. v. Morrill*, 639 N.E.2d 358, 361 (Ind.Ct.App.1994), the Fifth District held that the Comparative Fault Act abrogated the rule in *Davis* in that, under the act, no degree of negligence on the part of a plaintiff, including willful and wanton misconduct, could act as a complete bar to recovery.[9] In its discussion on the matter, the court wrote, "Booker correctly notes that operating a motor vehicle upon a public highway while intoxicated constitutes willful and wanton misconduct," citing *Williams, Szabo*, and *Kolkman*. *Id.*

More recently, this court noted the problem of the *Williams* holding in *Stroud v. Lints*, 760 N.E.2d 1176 (Ind.Ct.App. 2002), *trans. granted*. The court stated that the lead opinion in *Williams* purport-

9. Of course pursuant to Ind.Code § 34–51–2–6 (Burns Code Ed. Repl.1998), if a plaintiff's fault is greater than the combined fault of all persons who proximately contributed to the injury, the plaintiff is completely barred from recovery. Thus, the *Booker* holding referring to "degree of negligence" is speaking to the degree of culpability, not the amount of plaintiff's fault in relationship to the fault of others.

ed to overrule *Andert,* and noted that three out of the five justices voted to adhere to the holding of *Andert. Id.* at 1181 n. 3. However, our Supreme Court granted transfer in *Stroud,* vacating the opinion. The Court's opinion upon transfer in *Stroud,* however, makes no mention of *Williams* or *Andert.*

Our research has also revealed three federal court cases which cited *Williams* as holding that drunken driving is per se willful and wanton misconduct. *See Brownell v. Figel,* 950 F.2d 1285 (7th Cir.1991); *Miller v. Pardner's, Inc.,* 893 F.2d 932 (7th Cir.1990); *Estate of Kuba v. Ristow Trucking Co., Inc.,* 660 F.Supp. 1069 (N.D.Ind.1986), *aff'd* 822 F.2d 1090 (7th Cir.1987).

We have discovered only one case in which our Supreme Court has referred to the *Williams* decision since the *Obremski* decision. In *Albaugh v. State,* 721 N.E.2d 1233 (Ind.1999), the Court addressed the sufficiency of the evidence supporting the defendant's defense of entrapment to a charge of operating a motor vehicle while intoxicated. The *Albaugh* Court held that the State had not met its burden of disproving that the police did not cause the defendant to drive his vehicle while intoxicated. In so holding, the Court made the following observations:

> "This is not the usual case of a motorist who drives a motor vehicle while under the influence of alcohol. Here, a law enforcement officer played a *direct role* in influencing Albaugh to *leave his home* in the middle of the night to move his truck, only minutes later arresting him for driving while intoxicated. As the Court of Appeals said, 'the evidence suggests that Albaugh and his girlfriend had settled in for the evening and had decided not to move the truck until the following morning.' *Albaugh,* Slip Op. at 6 n. 4; *accord Williams v. Crist,* 484

N.E.2d 576, 578 (Ind.1985) ('[T]he intoxicated driver is guilty of willful and wanton misconduct when he deliberately assumes control of an automobile and places it upon a public highway.'); *Kolkman v. Falstaff Brewing Corp.,* 511 N.E.2d 478, 479 (Ind.Ct.App.1987) (same); *Roberts v. Chaney,* 465 N.E.2d 1154, 1161 (Ind.Ct.App.1984) (Ratliff, J., dissenting in part and concurring in part) ('Becoming intoxicated ordinarily is the result of the conscious and intentional act of the drinker.... Further, driving a motor vehicle is not an involuntary act. On the contrary, it is an act performed deliberately and intentionally by the driver.')." *Albaugh,* 721 N.E.2d at 1237.

Although referring to the language in *Williams* and *Kolkman,* the *Albaugh* court did not hold that driving while intoxicated was per se willful and wanton misconduct.

From these cases, we conclude that the *Williams* case did not overrule the holding in *Andert.* In *Obremski,* our Supreme Court's reference to *Williams* did not undermine *Andert,* because the Court said that a drunk driver's actions of crossing the center lane and striking another car while intoxicated would constitute willful and wanton misconduct. 497 N.E.2d at 910–11. The *Obremski* court did not hold that driving while intoxicated was per se willful and wanton misconduct. Neither did our Supreme Court so conclude in *Albaugh,* because that was not the issue before the Court. Thus, since *Williams,* no case from our Supreme Court has affirmed the conclusion reached in the lead opinion in *Williams.*

This court, however, has repeatedly referred to the lead opinion in *Williams* with approval, whether or not the various cases noted the uncertainty surrounding the

opinion.[10] Given the state of the case law, we can readily understand why the trial court here concluded that the challenged instruction correctly states the law. Be that as it may, we disagree with the cases from this court which rely upon *Williams.* We believe that *Williams* is not controlling. It did not overrule *Andert,* and no decision of the Supreme Court has since held that driving while intoxicated is per se willful and wanton misconduct. If *Williams* had not been cited and relied upon since, we would have no qualms in stating that *Andert* was controlling. But given the subsequent cases agreeing with *Williams,* we are not entirely confident of the precedential value of the *Andert* holding. Indeed, with the increased lack of tolerance for drunken driving in recent years,[11] we may express some doubt over whether, if presented with this question today, our Supreme Court would adhere to the holding in *Andert* or agree with the lead opinion in *Williams.* Either way, it is not within our purview to contradict what we take to be the controlling precedent of *Andert,* regardless of the subsequent approval of the lead opinion in *Williams* by several cases from this court.[12]

█ We therefore hold that the challenged portion of final jury instruction number sixteen was an incorrect statement of the law and, as such, should not be given to the jury upon remand.[13]

*Conclusion*

The trial court erroneously admitted evidence of Wohlwend's post-accident conduct, and this error was not harmless. Because Wohlwend does not challenge the trial court's directed verdict on the issue of liability or the award of compensatory damages, the only issue left to be resolved upon remand is that of punitive damages. Upon remand, the trial court should not instruct the jury that driving while intoxicated is per se willful and wanton misconduct.

The judgment of the trial court is affirmed with regard to compensatory damages, reversed with regard to punitive damages, and the cause is remanded for further proceedings consistent with this opinion.

BAKER, J., and DARDEN, J., concur.

10. The fact that our Supreme Court denied transfer in several of these cases is of no legal effect. *See* Ind. Appellate Rule 58(B).

11. See for example the 2001 amendments to Indiana Code § 9–30–5–1.

12. Our conclusion should in no way be read as condoning driving while intoxicated, which we recognize is a grave problem. We nevertheless feel bound to follow the controlling precedent of *Andert* until instructed otherwise.

13. We note that our difference with the cases following the lead opinion in *Williams* may not be as great in practice as it appears to be in theory. We can envision few situations in which a defendant who has been driving while intoxicated and who causes an accident will not also have committed some other misconduct as required by *Andert* to support a finding of willful or wanton misconduct.

In addition, we would observe that the instruction as given is mandatory in nature. The problem in this regard might be solved by the giving of an instruction to the effect that "operation of a motor vehicle while intoxicated, when coupled with other negligence or misconduct might be found to constitute willful and wanton misconduct."