**WITMAT DEVELOPMENT CORP.,
and Lorelei Airhart, Appellants–
Defendants,**

v.

**Randall DICKISON, Individually, and as
Personal Representative of the Estate
of Gregory Scott Dickison, Appellees.**

No. 11A04–0803–CV–163.

Court of Appeals of Indiana.

June 4, 2009.

Transfer Denied Sept. 11, 2009.

Thomas R. Haley III, Geoffrey C. Lambert, Jennings Taylor Wheeler & Haley, P.C., Carmel, IN, Attorneys for Appellant Witmat Development Corp.

William G. Smock, Michael A. Slagle, Smock & Etling, John P. Nichols, Anderson & Nichols, Terre Haute, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Randall Dickison, individually and as personal representative of the Estate of Gregory Dickison ("the Estate"), filed a complaint in Clay Superior Court against Witmat Development Corporation ("Witmat") alleging that Witmat negligently failed to warn of a water-filled strip pit adjacent to a public highway, which pit is located on Witmat's property. Witmat moved for summary judgment arguing that it owed no duty to Gregory Dickison ("Dickison"), or in the alternative, that Dickison's own negligence was the cause of the accident that resulted in his death. The trial court denied Witmat's motion for summary judgment. Witmat appeals and raises three arguments, but we address only the following dispositive issue:[1] whether Witmat owed a duty to Dickison as a matter of law. Concluding that Dickison was not traveling the roadway with reasonable care, and therefore, that Witmat is entitled to judgment as a matter of law, we reverse.

### Facts and Procedural History

On May 25, 2003, at approximately 4:30 a.m., eighteen-year-old Dickison was traveling westbound on County Road 100 North, in Clay County, Indiana, when his vehicle veered off the north side of the road. The "vehicle struck a small tree and continued to travel approximately 230 feet

---

1. Witmat also raises the following issues in its brief: 1) whether Witmat is entitled to judgment under the Comparative Fault Act, and 2) whether the trial court abused its discretion when it denied Witmat's motion to strike John Bischoff's affidavit. Because we conclude that Witmat owed no duty to Dickison, we do not address these remaining issues.

before entering" a water-filled strip pit located on Witmat's property. Appellant's App. p. 234. "The effective edge of the strip pit comes to within roughly five (5) feet of the road." *Id.* at 329. The accident resulted in Dickison's death and the cause of his death was drowning. An autopsy revealed that at the time of his death, Dickison's blood alcohol level was between 0.172 and 0.204. *Id.* at 98.

The Estate filed a complaint against Witmat under the Wrongful Death Statute alleging that Witmat negligently failed to warn of the water-filled strip pit adjacent to the public roadway. Witmat moved for summary judgment and argued that it owed no duty to Dickison, or in the alternative, that Dickison's own negligence was the cause of his death.

In response to Witmat's motion, the Estate submitted the affidavit of John Bischoff, a certified accident reconstructionist, which provides in pertinent part:

13. [County Road] 1400N extends west from the intersection immediately preceding the site where the Decedent's vehicle left the roadway and entered the strip pit at other than a 90 degree angle. On approach to the intersection from the east the road rises. I traveled through the intersection at a reasonable speed during daylight hours. As I came through the intersection, I suddenly became aware that the driver's side of my vehicle was in line with a telephone pole on the south side of the road which required appropriate steering correction. An overcorrection would more than likely have resulted in my vehicle leaving the right side of the road and ending up in the strip pit that the Decedent drowned in.

14. It is my opinion that it would be reasonable that someone traveling CR 1400N could, under certain conditions such as described above, overcorrect

their vehicle and travel along a trajectory, like the Decedent's vehicle, and into the strip pit located on the property of Witmat Development Corp.

15. The Defendant, Witmat Development Corp., had failed to erect any fences, barriers, or other protection from the strip pit in the advent a vehicle would deviate from CR 1400N in the direction of the strip pit located on the property of Witmat Development Corp.

*Id.* at 329. Witmat moved to strike Bischoff's affidavit.

On December 21, 2007, the trial court held a hearing on Witmat's motions. On January 29, 2008, the court denied Witmat's motion to strike and its motion for summary judgment. On Witmat's motion, the trial court entered an order certifying its judgment for interlocutory appeal. Our court accepted jurisdiction of this appeal on April 17, 2008. Additional facts will be provided as necessary.

### Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no dispute and which may be determined as a matter of law. *Swift v. Speedway Superamerica, LLC,* 861 N.E.2d 1212, 1213 (Ind.Ct.App.2007), *trans. denied.* Our standard of review is the same as that of the trial court. *Id.* Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Naugle v. Beech Grove City Sch.,* 864 N.E.2d 1058, 1062 (Ind. 2007). For summary judgment purposes, a fact is "material" if it bears on ultimate resolution of relevant issues. *Graves v. Johnson,* 862 N.E.2d 716, 719 (Ind.Ct.App. 2007). Moreover, in negligence cases, summary judgment is rarely appropriate because they are particularly fact sensitive and are governed by a standard of the

objective reasonable person—one best applied by a jury after hearing all of the evidence. *Id.* (citing *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind.2004)). Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Id.*

### Discussion and Decision

To prevail on a theory of negligence, the Estate must prove that 1) Witmat owed a duty to Dickison; 2) Witmat breached that duty; and 3) Dickison's death was proximately caused by the breach. *See Winchell v. Guy*, 857 N.E.2d 1024, 1026 (Ind.Ct.App.2006). In its summary judgment motion, Witmat argued that it owed no duty to Dickison as a matter of law. In response, the Estate argued that "Witmat knew or in the exercise of reasonable diligence should have been aware that ... Witmat's failure to erect any barriers, fences, lights, warning signs, cones, cordons or other warning devices presented a hazardous condition to drivers, due to the proximity of the strip pit on the north side of the roadway, particularly those who traveled along said road in the dark." Appellant's App. p. 207. Further, "it was reasonably foreseeable that [Dickison's] vehicle, or any vehicle, could deviate from the county road and land in the strip pit on Witmat's property, and that [Witmat's] failure to take precautions to prevent this from occurring proximately caused [Dickison's] death." Appellant's App. p. 208.

Because we are presented with a case in which the question of duty has not been established, we balance the following factors established in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind.1991), to determine whether a duty exists: 1) the relationship between the parties; 2) the reasonable foreseeability of the harm to the person injured; and 3) public policy concerns.

*See N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind.2003). The existence of a duty is generally a question of law for the court to decide. *Id.* at 466. However, "factual questions may be interwoven with the determination of the existence of a relationship and the foreseeability of harm, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder." *Ousley v. Bd. Of Comm'rs of Fulton County*, 734 N.E.2d 290, 293 (Ind.Ct.App.2000), *trans. denied* (citation omitted).

"The public right of passage in a road carries with it the obligation upon occupiers of adjacent land to use reasonable care not to endanger such passage by excavations or other hazards so close to the road as to make it unsafe to persons using the road with ordinary care." *Ind. Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1381 (Ind.Ct.App.1996), *trans. denied*. Moreover, "[o]ur supreme court has long recognized a relationship between owners or occupiers of land adjacent to a highway and persons rightfully using the highway." *Id.* (citing *City of Indianapolis v. Emmelman*, 108 Ind. 530, 534, 9 N.E. 155, 157 (1886)).

Our courts' holdings are consistent with Section 368 of the Restatement (Second) of Torts (1965), which provides:

§ 368. Conditions Dangerous to Travelers On Adjacent Highway

A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition *while traveling with reasonable care upon the highway*, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel.

(emphasis added). Therefore, "the risk posed by an excavation on property adjacent to a public way might, in some situations, create a relation sufficient to give rise to a tort duty to guard against foreseeable injuries to persons exercising due care." *Staggs,* 672 N.E.2d at 1381.

In *Staggs,* the decedent was driving her vehicle on a road with a downhill grade that curved sharply to the left around a quarry owned by Indiana Limestone. On the date of the accident, there were icy spots on the road near the quarry. The decedent lost control of her vehicle and veered towards the inside of the curve. Her car crossed the center line and traveled forty-two feet in the opposite lane. The vehicle then left the roadway and traveled another 156 feet before striking an embankment at the edge of the quarry. The vehicle then fell thirty feet into the quarry and became submerged twenty-five feet underwater.

On appeal of the denial of its motion for summary judgment, Indiana Limestone argued that it had no relationship with the decedent, and therefore owed no duty to the decedent. Our court held that "Indiana Limestone had a common law relationship with the decedent *if she was traveling with reasonable care,* if she had a right to be on the road, and if users of the road were within the 'range of apprehension' of the risk posed by the quarry." *Id.* at 1381 (emphasis added). Ultimately, we concluded that summary judgment was inappropriate on the issue of whether the parties had a relationship that could give rise to a duty because a genuine issue of material fact existed as to whether the decedent was exercising the required degree of care in her use of the roadway at the time of the accident. *Id.* at 1382.

In this case, in support of its motion for summary judgment, Witmat designated the following evidence: 1) Dickison left a party at approximately 4:00 a.m. on the date of the accident; 2) he still had his seatbelt on when he was found in the submerged vehicle; 3) there was an empty bottle of vodka in the vehicle; 4) Dickison's autopsy revealed that his blood alcohol was 0.172 to 0.204 at the time of his death; and 5) Dickison's cause of death was drowning. Appellant's App. pp. 89–90, 96, 99. Furthermore, Witmat designated an affidavit from Forensic Pathologist Roland Kohr, who stated, "[t]he two (2) day length of time between the deceased's death and the autopsy had no significant effect on the blood alcohol level from his death until the performance of the autopsy. The body was in a state of good preservation with no evidence of putrefactive changes." *Id.* at 100. Dickison's "level of intoxication would greatly affect and reduce or diminish his ability to drive safely upon the road[.]" *Id.*

State Trooper Chris Carter, who has multiple certifications in accident reconstruction, described the accident as follows:

> From my observations at the accident scene, it appeared that approximately one-half (1/2) of Gregory Scott Dickison's vehicle left the road for some distance, sideswiped several trees, then continued to travel some distance before the remaining one-half (1/2) of the vehicle left the road and continued to travel some distance before entering the water on the adjacent property.

*Id.* at 404. Witmat also designated the affidavit of Clay County Highway Supervisor Harry Foster, who stated that Dickison's accident was the first accident in this area where "a vehicle left the roadway and entered the body of water on the north side of the road." *Id.* at 35. Further,

Foster stated that the county had not received any complaints "that there was any real or perceived problem with the portion of County Road 1400 North where Mr. Dickison's vehicle left the roadway." *Id.* Finally, Witmat designated the Estate's response to request for admissions, in which Dickison's father admitted that "the area of County Road 1400 North in question is relatively straight and flat." *Id.* at 38–39.

To summarize, Dickison, who was operating a motor vehicle with a blood alcohol level of more than two times the legal limit,[2] drove his vehicle off of a relatively flat and straight roadway, and traveled 230 feet before the vehicle entered the water-filled strip pit. The Estate designated no evidence in opposition to Witmat's evidence concerning Dickison's level of intoxication.

With regard to the section of County Road 1400 North at issue in this case and Witmat's adjacent property, the Estate designated the affidavit of Accident Reconstructionist John Bischoff, who averred:

> On approach to the intersection from the east the road rises. I traveled through the intersection at a reasonable speed during daylight hours. As I came through the intersection, I suddenly became aware that the driver's side of my vehicle was in line with a telephone pole on the south side of the road which required appropriate steering correction. An overcorrection would more than likely have resulted in my vehicle leaving the right side of the road and ending up in the strip pit that the Decedent drowned in.

*Id.* at 329. However, the Estate failed to designate any evidence that the accident occurred because Dickison overcorrected his vehicle. Moreover, the police report and Trooper Carter's report do not support that hypothesis. Those reports indicate that Dickison's vehicle only partially left the roadway initially and traveled a significant distance before the vehicle left the roadway entirely. *Id.* at 408.

This evidence leads us to one conclusion: that Witmat owed no duty to Dickison because Dickison, whose blood alcohol was 0.172 to 0.204 at the time of his death, was not traveling the roadway with reasonable care.[3] In addition and equally important to our conclusion, the Estate failed to designate any evidence tending to establish that some other factor may have caused Dickison's accident.

For all of these reasons, we conclude that the trial court erred when it denied Witmat's motion for summary judgment.

Reversed.

BAILEY, J., and BARNES, J., concur.

---

2. *See* Ind.Code § 9–30–5–1 (2004).

3. In *Williams v. Crist,* 484 N.E.2d 576, 578 (Ind.1985), in a case involving the Indiana Guest Statute, our supreme court stated, "it is high time we publicly state that the intoxicated driver is guilty of willful and wanton misconduct when he deliberately assumes control of an automobile and places it upon a public highway." *But see Wohlwend v. Edwards,* 796 N.E.2d 781 (Ind.Ct.App.2003) (calling into question the precedential value of the *Williams* holding).