

FILED

Oct 13 2016, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas Rosta
Metzger Rosta, LLP
Noblesville, Indiana

ATTORNEY FOR APPELLEES

Adam J. Sedia
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Danny Sims,

*Appellant-Defendant,*

v.

Andrew Pappas and Melissa Pappas,

*Appellees-Plaintiffs.*

October 13, 2016

Court of Appeals Case No.
45A03-1509-CT-1424

Appeal from the Lake Superior
Court.
The Honorable William E. Davis,
Judge.
Cause No. 45D05-1306-CT-107

**Shepard, Senior Judge**

[1]     During a trial over damages caused by a drunk driver, the defendant acknowledged his intoxication and responsibility for the collision. He objected to admitting evidence about two decades-old convictions for alcohol-related offenses. The objection was overruled and the jury ultimately returned a verdict, mostly for compensatory damages.

[2]     While we do not embrace his proposal that prior convictions should be barred outright as they mostly would be in a criminal trial, we conclude that in this case they neither proved nor disproved any facts that were central to the main questions the jury decided – compensatory damages and loss of consortium. As they were not relevant to these issues and unfairly prejudicial (though probably not to the question of punitive damages), we reverse and order a new trial.

## Facts and Procedural History

[3]     On May 17, 2013, after working an eight-hour shift, Danny Sims left work at 7:30 a.m., played golf with friends, and then spent the afternoon and evening drinking with his son at a bar in Crown Point, Indiana. Sims consumed at least seven alcoholic beverages, including three beers and some alcoholic energy drinks. Sometime between 9 and 9:30 p.m., Sims was escorted out by two bouncers, because he fell asleep at the bar and fell when he tried to stand up from the bar stool. Sims struggled with the bouncers and accidentally struck his son in the mouth. The bouncers walked Sims to his vehicle, and Sims entered his vehicle and attempted to drive home.

[4]     Sims was travelling southbound on Broadway Avenue and entered the left turn lane at the intersection of 109th Avenue. Andrew Pappas was driving northbound on Broadway on his way to work.[1] Pappas approached the

---

[1] The only issue before this Court on appeal does not involve Pappas' wife, Melissa. Therefore, in this appeal, we use the name "Pappas" to refer to Andrew Pappas.

intersection of 109th Avenue and attempted to proceed through the intersection, as the traffic signal indicated a green light. Sims failed to yield the right-of-way and collided head-on with Pappas' vehicle.

[5] Pappas was severely injured in the collision. At the time of the accident, Sims' blood alcohol content measured .18. Sims admitted being at fault and to being intoxicated at the time of the accident. In the course of criminal charges, Sims pleaded guilty to operating while intoxicated, as a Class C misdemeanor.[2] He was fined and sentenced.

[6] Pappas and his wife Melissa sued Sims for personal injuries and loss of consortium, alleging negligence, recklessness, and willful and wanton misconduct. At trial, over Sims' objection, the court allowed testimony about Sims' driving record, which included a 1983 conviction for operating while intoxicated, and a 1996 conviction for reckless driving (based on a failed chemical test).[3]

[7] On July 1, 2015, following a three-day trial, the jury awarded compensatory damages to Pappas and to his wife, and punitive damages to Pappas. The compensatory damages were more than ninety percent of the total.

---

[2] *See* Ind. Code § 9-30-5-1 (2001).

[3] In 1996, Sims failed a chemical test. He entered into a stipulated plea agreement and pled guilty to reckless driving. When the Pappases' counsel attempted to enter Sims' driving record into evidence, which included the 1983 and 1996 convictions, Sims' counsel objected and the Pappases' counsel withdrew the exhibit.

After trial, Sims resisted entry of judgment on the verdict, arguing improper admission of evidence about his driving offenses, that the compensatory and punitive damages awards were excessive, and that the punitive award violated his due process rights. After a hearing, the trial court deemed Sims' written objections a motion to correct error (under Indiana Trial Rule 59), denied the motion, and entered judgment for the Pappases. This appeal followed.

## Issue

The dispositive issue is: Whether the trial court erred by admitting evidence of Sims' decades-old prior criminal convictions for driving under the influence and reckless driving.

## Discussion and Decision

We evaluate challenges to admission of evidence under a standard that treats the decision to admit or exclude evidence as lying within the sound discretion of the trial court, one that is afforded great deference on appeal. *Bacher v. State*, 686 N.E.2d 791 (Ind. 1997). We will not reverse that decision absent a showing of manifest abuse of that discretion. *Strack and Van Til, Inc. v. Carter*, 803 N.E.2d 666 (Ind. Ct. App. 2004). Such an abuse occurs where the trial court's decision is against the logic and effect of the facts and circumstances before it. *Santelli v. Rahmatullah,* 993 N.E.2d 167 (Ind. 2013). To determine whether reversal is required, the court considers the probable impact of the evidence upon the jury. *Gibson v. Bojrab,* 950 N.E.2d 347 (Ind. Ct. App. 2011). Even if we find inadmissible evidence was improperly placed before the jury, we only

reverse if that error was clearly prejudicial. *Morse v. Davis,* 965 N.E.2d 148 (Ind. Ct. App. 2012), *trans. denied*.

[11] Sims argues the evidence in question is inadmissible under Indiana Evidence Rules 403 and 609(b). Pappas counters the trial court properly admitted the evidence because 1) the prior convictions were probative of the reprehensibility of Sims' actions, which, according to Pappas, outweighed any prejudice; and 2) Indiana Evidence Rule 609 does not apply to the admission of the prior convictions, but instead applies only to the admissibility of certain evidence for purposes of impeaching a witness.

[12] Evidence Rule 609 provides:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime must be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury.
>
> (b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than ten (10) years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
>> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
>>
>> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Ind. Evidence Rule 609 (2014). Under the rule, evidence that a witness has been convicted of certain crimes or an attempt of those crimes is admissible for impeachment purposes. Under section (b) of the rule, evidence of convictions more than ten years old is admissible only upon advance written notice, and subject to a Rule 403 balancing test. Indiana Evidence Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence.

[13] Pappas admits the introduction of Sims' prior convictions was prejudicial, but argues the evidence was not unfairly so. According to Pappas,

> Because Sims's prior offenses had a direct bearing on the reprehensibility of his actions, they served as an entirely legitimate and proper means of persuasion on the issue of punitive damages. Also, because their temporal remoteness affected their weight rather than their admissibility, the [trial] court acted well within its discretion to admit evidence of them at trial.

Appellees' Br. p. 14.

[14] Sims concedes that the evidence of his prior convictions was not used to impeach him, but nevertheless urges application of the ten-year time limitation in Rule 609(b) under the premise "that evidence of the prior convictions [is not] indicative of [Sims'] state of mind because they are far too remote in time." Appellant's Br. pp. 7-8. Specifically, he contends, "[t]he law sets a [ten-year] limitation on the use of such evidence for impeachment, and it is logical to

apply the same limitation for [Sims'] state of mind at the time of the accident."[4] Sims further argues: "[j]ust as the passing of time impacts whether a prior criminal conviction is admissible for impeachment, it follows that the passing of time should impact admissibility of prior convictions regarding [Sims'] state of mind in this case."[5]

[15] There is no direct authority for his premise, and indeed such case law that exists leans against it. *Davidson v. Bailey*, 826 N.E.2d 80 (Ind. Ct. App. 2005).

[16] *Davidson* was a personal injury suit arising from a 1999 motor vehicle accident. David Davidson operated a vehicle with a blood alcohol content of over twice the (then) statutory limit of .10, and caused an accident. Evidence of his subsequent DUI convictions was excluded at trial, but evidence of his four prior DUI convictions, from 1990, 1991, 1993, and 1995, was admitted. A jury awarded compensatory and punitive damages against Davidson.

[17] On appeal, Davidson argued (among other things) the trial court erred in admitting evidence of his prior DUI convictions. According to Davidson, evidence of the prior DUI convictions was unfairly prejudicial because when the jury heard the evidence, there was a danger that it would and did punish him for his past behavior rather than his conduct the night of the accident.

---

[4] *See* Appellees' App. p. 29 (Sims' Memorandum of Law in Support of His Motion Objecting to Entry of Judgment on the Jury's Verdict).

[5] *Id.* at 29-30.

[18] In support of his argument, Davidson pointed to *Wohlwend v. Edwards*, 796 N.E.2d 781 (Ind. Ct. App. 2003), in which a panel of this court reversed an award of punitive damages arising out of a motor vehicle accident. As an issue of first impression, the *Wohlwend* court held it was reversible error to admit evidence of defendant's <u>subsequent</u> acts of drunk driving even if limited to the issue of punitive damages. In reaching this conclusion, the *Wohlwend* court engaged in an extensive discussion of *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003),[6] as well as relevant case law from other jurisdictions, and expressed concern that admission of defendant's subsequent bad acts created a danger that the jury would punish defendant for subsequent behavior rather than the conduct involving the plaintiffs. *See Wohlwend v. Edwards*, 796 N.E.2d 781.

[19] The *Davidson* panel ultimately found that introduction of Davidson's prior DUI convictions (and the fact that he was on probation for the fourth DUI conviction when the crash occurred) to show his state of mind at the time of the accident was prejudicial, but not unfairly so. *See Davidson*, 826 N.E.2d 80. It

---

[6] In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the Court struck down an award of punitive damages, finding that the reprehensibility prong of the *Gore* test (found in *BMW of No. Am., Inc. v. Gore*, 517 U.S. 559 (1996)) was miscalculated due to the introduction of "perceived deficiencies of State Farm's operations throughout the country," much of which had little or no relation to the tort at issue and some of which was not proscribed by law where it occurred. *Id*. at 420.

thus held that the trial court did not err in admitting evidence of Davidson's prior DUI convictions.

[20] Sims attempts to distinguish his case from *Davidson* by arguing that his past convictions for driving offenses "w[ere] highly prejudicial and sufficiently removed in time to have no relevance to [his] state of mind at the time of the accident;" and that "unlike [Davidson, Sims] was not on probation at the time of the accident." Appellant's Br. pp. 7, 8. Sims also emphasizes that Davidson had twice the number of convictions as Sims in one-third the time and that all of Davidson's convictions were within ten years of the accident.

[21] We think Sims' proposal to apply the ten-year time limit of Evidence Rule 609 is a bridge too far. As Pappas argues, for example, the principle of 609 and such case law as exists would seem to make evidence of prior DUI's admissible on an issue like punitive damages. A recidivist is worthy of greater punishment than a one-time offender.

[22] Nevertheless, we determine that unlike in *Davidson*, the prejudicial effect of the evidence of Sims' prior alcohol-related driving offenses substantially outweighs its probative value. In this trial, those convictions had no relevance or probative value as respects the claims of compensatory damages which made up the great majority of the jury's verdict.

[23] Relevant evidence is defined as evidence having any tendency to make the existence of any pertinent fact more probable or less probable than it would be without the evidence. *See* Ind. Evidence Rule 401. To determine whether

evidence concerns a material fact, we look to the nature of the case and the issues being litigated, which are usually set out in the pleadings. *State Farm Mut. Auto. Ins. Co. v. Earl*, 33 N.E.3d 337 (Ind. 2015).

[24] Still, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. *See* Ind. Evidence Rule 403. Unfair prejudice addresses the way in which the jury is expected to respond to the evidence. *Ingram v. State*, 715 N.E.2d 405 (Ind. 1999). It looks to the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence to suggest a decision on an improper basis. *Id*.

[25] The remoteness of prior misconduct tends to diminish the probative value of evidence and weigh against its admission. *See, e.g., Spencer v. State*, 703 N.E.2d 1053 (Ind. 1999) (evidence of bad acts occurring more than three years before the charged incident had low probative value); *see also, The Past Comes Back to Haunt You: Yeakley v. Doss, Prior Convictions as Admissible Evidence of Punitive Damages*, 62 Ark. L. Rev. 153, 172-73 ("[A]dmission of prior convictions that are far back in a person's past may also be unfair. For example, if a twenty-two-year-old college student was convicted for [driving while intoxicated], and then never had an encounter again until he was sixty years old, it is unfair to allow the jury to consider his first conviction from thirty-eight years ago."). "Some proffered evidence may be irrelevant because it is too remote." *Hicks v. State*, 690 N.E.2d 215, 220 (Ind. 1997). Still, there is no bright-line rule

concerning when prior misconduct becomes too old to have any probative value.

[26] Just as the foregoing analysis suggested, in this case one of the offenses occurred thirty years before the collision with Pappas, when Sims was just eighteen years old. The other conviction was seventeen years in the past. While these offenses were likewise related to alcohol, their probative value on the issue of compensatory damages was not great. Whether they establish a pattern of reckless behavior on the part of Sims may be fairly debated, and if that were their only use at trial the decision to admit them might stand on firmer ground. [7]

[27] What is not really debatable is their relevance to the issue the jury found the most weighty – compensatory damages. After all, Sims admitted that he was responsible for the crash that injured Pappas and admitted that he was intoxicated at the time.

[28] Furthermore, we cannot say that the jury was unaffected by this evidence. Pappas' lawyer apparently regarded the evidence as influential, as he used final

---

[7] Pappas turns this panel's attention to *Catt v. Skeans*, 867 N.E.2d 582 (Ind. Ct. App. 2007), *trans. denied*, maintaining that "*Catt* held that admission of prior convictions for [the purpose of showing reprehensibility] was within the trial court's discretion." Appellees' Br. p. 13. However, *Catt* does not so hold. In *Catt*, Catt operated his vehicle while intoxicated and collided with Skeans, who was driving a motorcycle. Catt eventually pleaded guilty to operating while intoxicated (OWI). It was his third conviction for the offense. Skeans sought damages, and following a jury trial was awarded compensatory damages and punitive damages. Catt appealed, but did not raise any issues on appeal regarding his prior OWI convictions. The panel in *Catt* held (among other things) the punitive damages award was not unconstitutionally excessive under the Due Process Clause, and evidence supported the compensatory damages award. *Catt*, 867 N.E.2d at 582.

argument to declare that the jury should do more than the criminal justice system had done. Counsel argued at the close of trial that Sims received "light punishment" for the prior convictions. Regarding the 1996 reckless driving conviction, counsel argued: "In 1996, he was charged with DUI, [sic] he failed a [chemical] test. And then he got a lawyer and he got off, and he got it pled down to reckless driving. For them to stand here and say that, [y]ou know what[,] he's just a human and he made a mistake, [sic] if it's his first offense, I might see that, [sic] this is the third time he's done it." Tr. p. 472. Later in his closing argument, counsel argued: "The bottom line is, folks, this is no different than the other two criminal cases, [sic] it's no different than the criminal case in this instance. They're playing the system. And what they do is they come in here and they argue, [w]oe is me, woe is me . . . ." Tr. p. 474.

[29] Pappas claims that, even if the evidence was erroneously admitted, the error was harmless and reversal is not required. Harmless error is error that does not affect the substantial rights of a party given the error's likely impact on the jury in light of other evidence presented at trial. *See Littler v. State,* 871 N.E.2d 276 (Ind. 2007) (citation and quotation omitted). In this case, the jury was exposed to Sims' decades-old, alcohol-related convictions and the punishment he received for committing the offenses. The Pappases' counsel encouraged the jury to take into account Sims' plea agreements in determining the amount of damages to award the Pappases. Because the possibility exists here that the jury's damages award punished Sims a second time for his past criminal

transgressions, we are unable to say that the trial court's error in admitting the evidence was harmless.

[30] We do not say that evidence of decades-old, alcohol-related offenses can never be admissible in civil actions for damages arising from motor vehicle accidents. But in this case, in light of Sims' admissions of fault and to being intoxicated at the time of the accident, and taking into consideration the evidence regarding the circumstances of the accident that was presented at trial, and the inferences made by the Pappases' counsel that Sims was not punished properly for the prior convictions, the prejudicial effect of evidence of a thirty-year-old conviction for OWI and a seventeen-year-old conviction for reckless driving outweighs any probative value the evidence can serve.

## Conclusion

[31] The trial court erroneously admitted evidence of Sims' prior alcohol-related convictions from 1983 and 1996, and the error was not harmless. The trial court's judgment entered on the jury verdict is reversed and this cause is remanded for retrial.

Riley, J., concurs.

Altice, J., dissenting with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Danny Sims,

*Appellant-Defendant,*

v.

Andrew Pappas and Melissa
Pappas,

*Appellees-Plaintiffs.*

Court of Appeals Case No.
45A03-1509-CT-1424

**Altice, Judge, dissenting.**

[32] I agree with the majority's conclusion that the ten-year limit set out in Ind. Evidence Rule 609 does not apply in this context. I cannot agree, however, with the majority's ultimate conclusion, based on an Ind. Evidence Rule 403 analysis, that the trial court abused its discretion by admitting evidence of Sims's 1983 and 1996 prior alcohol-related offenses.

[33] On more than one occasion, the majority observes that the prior convictions had no relevance or probative value with respect to the determination of compensatory damages. This is true but beside the point. A review of the record, especially closing arguments,[8] makes clear that the evidence of Sims's prior offenses was admitted for the sole purpose of establishing punitive damages. The evidence had a direct bearing on the reprehensibility of Sims's actions and his state of mind at the time of the accident. *See Catt v. Skeans*, 867 N.E.2d 582, 587 (Ind. Ct. App. 2007) ("Catt had been convicted twice before of this same offense; thus, it was not an isolated incident. The degree of reprehensibility of Catt's conduct, therefore, is rather significant."), *trans. denied*; *Davidson v. Bailey*, 826 N.E.2d 80, 86 (Ind. Ct. App. 2005) ("evidence of Davidson's four previous DUI convictions was clearly relevant to his state of mind at the time of the accident and whether his actions were willful and wanton justifying the imposition of punitive damages").

---

[8] Plaintiffs' counsel carefully confined any discussion of the prior offenses to the issue of punitive damages. In closing argument, counsel discussed compensatory damages in depth with no mention of the prior offenses and then briefly addressed the wife's loss of consortium claim. Counsel then turned to punitive damages:

> Punitive damages. We've asked for punitive damages and we think that clear and convincing evidence suggests that the Defendant was committing reprehensible behavior. And it is to punish, it is to punish. But, again, the reason it's to punish and the reason it's brought is to stop things like this from happening.
>
> And if you feel that's there clear and convincing evidence that you need to send a message, you know, to Mr. Sims that this must stop. Three times is enough. What's going to happen the fourth time? Totally your discretion. However much you feel is appropriate to send that message. That's your decision….

*Transcript* at 451-52. Defense counsel also addressed the prior offenses expressly in the context of punitive damages. In rebuttal, plaintiffs' counsel discussed the prior offenses in a bit more depth, as quoted by the majority, but counsel qualified his statements: "Again, that goes to the punitive and that's up to you guys." *Id*. at 472.

Though relevant to the issue of punitive damages, the prior convictions' remoteness in time does tend to diminish their probative value. In my mind, however, this should go to the weight of the evidence[9] rather than its admissibility, and I cannot say that the trial court abused its discretion in this regard. *See Spencer v. State*, 703 N.E.2d 1053, 1056 (Ind. 1999) (even though remote crimes had low probative value and the Court was "inclined to think this evidence should not have been admitted", the Court found no abuse of discretion in the trial court's admission of the evidence). Accordingly, I respectfully dissent.

---

[9] The majority places great emphasis on the jury's verdict and the fact that the vast majority of the damages awarded were compensatory rather than punitive. To me, this indicates that the jury carefully weighed the evidence admitted regarding punitive damages and gave little weight to the prior convictions due to their remoteness in time.