

FILED

May 11 2017, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT
Thomas E. Rosta
Tammy J. Meyer
Metzger Rosta, LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEES
Adam J. Sedia
Michael E. Polen, Jr.
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

ATTORNEY FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF
INDIANA
Donald B. Kite, Sr.
Wuertz Law Office, LLC
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS
ASSOCIATION
Richard A. Cook
Yosha Cook & Tisch
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 45S03-1701-CT-26

DANNY SIMS,

*Appellant (Respondent below),*

v.

ANDREW PAPPAS AND MELISSA PAPPAS,

*Appellees (Petitioners below).*

Appeal from the Lake Superior Court, No. 45D05-1306-CT-107
The Honorable William E. Davis, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 45A03-1509-CT-1424

**May 11, 2017**

**Rucker, Justice.**

In this personal injury case arising out of an automobile collision we explore among other things whether and under what circumstances a drunk driver's prior alcohol-related driving convictions can be introduced into evidence.

**Facts and Procedural History**[1]

On May 17, 2013, Andrew Pappas was driving to work in Crown Point, Indiana, when his car collided head-on with a car driven by Danny Sims. In consequence Pappas sustained serious injuries which we discuss later in this opinion. At this point, suffice it to say Sims was driving home from a bar where he had become intoxicated after drinking several alcoholic beverages. Sims' blood alcohol content was .18%, which was over twice the legal limit of .08%.[2] Sims was arrested and ultimately pleaded guilty to operating a vehicle while intoxicated as a class C misdemeanor.

Pappas filed a complaint against Sims on June 13, 2013. The complaint asserted theories of negligence, gross negligence, recklessness, and willful and wanton misconduct. Pappas' wife Melissa joined the complaint on a loss of consortium claim.[3]

During pre-trial discovery, and responding to requests for admissions, Sims admitted "that at the time of the crash, [he was] operating [his] vehicle while intoxicated." Appellant's App. at 43. When asked to admit or deny that "in 1996, you failed a chemical test and as a result

---

[1] We heard oral arguments on March 9, 2017, at the Theodore Roosevelt College and Career Academy in Gary, Indiana. About three hundred students from nine high schools across Lake County attended along with local attorneys, judges, and elected officials. We thank the staff and administration of the Academy for making this event an overwhelming success. We offer especial acknowledgment to Academy students of the Junior ROTC for their outstanding escort and security service.

[2] The record shows Sims refused to submit to a chemical breath test at the scene. After being advised of Indiana's implied consent law, the arresting officer accompanied Sims to St. Anthony Hospital in Crown Point where hospital staff withdrew Sims' blood for analysis. Tr. at 85-90.

[3] An injured person's spouse may bring an action for loss of consortium when the injury deprives the spouse of "love, companionship, affection, society, comfort, services and solace" in addition to the "loss of the sexual relationship." Dearborn Fabricating and Eng. Corp., Inc. v. Wickham, 551 N.E.2d 1135, 1137 (Ind. 1990).

entered in to a Stipulated Plea Agreement wherein you plead guilty to Reckless Driving," and "in 1983, your driver's license was suspended for Operating While Intoxicated and Leaving the Scene of the Accident-Injury/Death/Entrapment," Sims objected on grounds of relevance but noted, "[w]ithout waving said objection, Defendant responds: Admit." Appellant's App. at 45. Also, Sims filed a pre-trial motion in limine seeking to exclude various items of evidence.[4] The trial court granted the motion in part, denied it in part, and withheld ruling until trial in part, including on those portions of the motion seeking to exclude evidence that "Sims may have been involved in prior or subsequent automobile accidents"; evidence of "Sims's driving record"; and "[e]vidence of Defendant's financial status." See Appellant's App. at 14-16.

A jury trial began June 29, 2015. In his opening statement, Sims admitted that he was "at fault" for the collision and that he was intoxicated at the time. Tr. at 47. During his case-in-chief Pappas moved to introduce into evidence Sims' Bureau of Motor Vehicles driving record through the testimony of the investigating police officer. Sims objected arguing among other things the document was "more prejudicial than probative." Tr. at 98. After entertaining extended arguments on both sides, and not specifically responding to Sims' prejudice/probative contention, the trial court overruled the objection on grounds that Sims had admitted the violation contained in the BMV record in response to the requests for admissions.

At the close of trial the jury returned a verdict for Pappas in the amount $1,444,000.00 for compensatory damages and returned a verdict for his wife Melissa in the amount of $373,500.00 for her loss of consortium claim. The jury also awarded Pappas punitive damages in the amount of $182,500.00 for a total award of two million dollars. Sims filed a written "Motion Objecting to Entry of Judgment on the Jury's Verdict," contending: (1) the evidence regarding his prior convictions was improperly admitted; (2) the award of punitive damages is excessive and constitutes a violation of the Due Process Clause of the Fourteenth Amendment; and (3) the verdict is unsupported by the evidence and is excessive. App. at 21. After taking the matter under advisement the trial court treated the objection as a Motion To Correct Error. It then denied the motion and entered judgment on the jury's verdict.

---

[4] The motion set forth twenty separate and enumerated paragraphs, identifying the evidence sought to be excluded. Appellant's App. at 13-17.

Sims appealed raising the following restated claims: (1) the trial court improperly admitted evidence of Sims' prior criminal convictions; (2) the jury's award of compensatory damages is excessive and unsupported by the evidence; and (3) the jury's award of punitive damages is excessive and unsupported by the evidence.

In a divided opinion the Court of Appeals found the first claim dispositive, reversed the trial court's judgment, and remanded this cause for retrial. In so doing the court concluded Sims' prior alcohol-related convictions in 1983 and 1996 "neither proved nor disproved any facts that were central to the main questions the jury decided—a compensatory damages and loss of consortium." Sims v. Pappas, 61 N.E.3d 1285, 1286 (Ind. Ct. App. 2016). Having previously granted transfer we now affirm the judgment of the trial court. Additional facts are set forth below.

## Discussion

This Court generally reviews "a trial court's ruling on a motion to correct error for an abuse of discretion." Santelli v. Rahmatullah, 993 N.E.2d 167, 173 (Ind. 2013). Further, a trial court is afforded broad discretion in ruling on the admissibility of evidence. Turner v. State, 953 N.E.2d 1039, 1045 (Ind. 2011). We will disturb the trial court's ruling only where the challenger shows the trial court has abused that discretion. Id. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." Id.

## I. Relevance of Prior Alcohol-Related Driving Offenses

Sims contends "evidence of [his] prior criminal convictions was improperly admitted because the danger of unfair prejudice of 17 and 30 year old convictions outweighs their probative value." Appellant's Br. at 5. Sims invokes Indiana Evidence Rule 403 in support of his contention. The Rule provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative

evidence." Ind. R. Evid. 403. In turn, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. R. Evid. 401.

We begin by observing that although citing Rule 403, Sims does not concede that evidence of his prior convictions were relevant for any purpose at all. Indeed at oral argument when asked whether his position was that the evidence was not relevant or whether it was relevant but should not have been admitted because of unfair prejudice, Sims was equivocal. See Oral Argument at 12:28-13:19 (stating, "our position is both"); see also Corrected Appellant's Br. in Response to Pet. to Trans. at 9 n.6 ("Sims does not concede that evidence of his prior convictions was relevant and admissible as to punitive damages."). In any event, we agree with our Court of Appeals colleagues that evidence of Sims' prior convictions was "not relevant" with respect to "compensatory damages and loss of consortium." Sims, 61 N.E.3d at 1286. But in addition to seeking compensatory damages and damages for loss of consortium, Sims also sought punitive damages. In our view the question thus presented is whether evidence of Sims' prior convictions was relevant on this narrow point.[5]

"The central purpose of punitive damages is to punish the wrongdoer and to deter him from future misconduct . . . ." Crabtree ex rel. Kemp v. Estate of Crabtree, 837 N.E.2d 135, 139 (Ind. 2005). To come within the embrace of a punitive damages claim the defendant must have "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." Yost v. Wabash Coll., 3 N.E.3d 509, 523 (Ind. 2014) (quotation omitted). The tortious conduct must be marked by malice, fraud, gross negligence, or oppressiveness not resulting from "mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other such noniniquitous human failing." Id. at 524.

---

[5] Amicus curiae Indiana Trial Lawyers Association contends evidence of prior convictions is also relevant on the question of reasonable care and proximate cause, both of which are implicated in determining liability for a negligence claim. The parties do not explore this issue likely because liability was conceded. In similar fashion we decline to explore this issue as well. Instead we leave it open for another day.

In Rule 401 terms the question at this juncture is whether evidence of Sims' prior alcohol related driving offenses had *any tendency* to make a fact—for example, gross negligence—more or less probable than it would be without the evidence; and whether gross negligence for example is of consequence in determining the action. See Ind. R. Evid. 401. Gross negligence is defined as "[a] conscious, voluntary act or omission in reckless disregard of . . . the consequences to another party." N. Ind. Pub. Serv. Co. v. Sharp, 790 N.E.2d 462, 465 (Ind. 2003) (alteration in original) (quoting Black's Law Dictionary 1057 (7th ed. 1999)).

As the Court of Appeals has previously observed evidence of similar acts may be admissible "because of the light which it throws on the state of mind of a person, as for example, his knowledge, motive or intent." Lindley v. Oppegaard, 275 N.E.2d 825, 827 (Ind. Ct. App. 1971). The Court of Appeals has also held "evidence of [the tortfeasor's] four previous DUI convictions was clearly relevant to his state of mind at the time of the accident and whether his actions were willful and wanton justifying the imposition of punitive damages." Davidson v. Bailey, 826 N.E.2d 80, 86 (Ind. Ct. App. 2005). We agree with these precedents and conclude that evidence of Sims' two prior similar acts had at least some, if not substantial, "tendency" in demonstrating whether Sims' conduct at the time of the collision was a conscious and voluntary act committed in reckless disregard of the consequences to others. The evidence was thus relevant within the meaning of Rule 401.

We hasten to emphasize the evidence was relevant only on the issue of punitive damages. It had no bearing on and thus was not relevant to compensatory and loss of consortium damages. In essence the evidence was relevant and potentially admissible for a limited purpose only. If either party were concerned that the jury may view the evidence more broadly or for otherwise unintended purposes, then our Rules of Evidence and Trial Rules provide a safe harbor. For example, Indiana Evidence Rule 105 provides: "If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Importantly, the party seeking to limit the evidence has the duty to request the instruction. Small v. State, 736 N.E.2d 742, 746 (Ind. 2000) (observing "a trial court has no affirmative duty to admonish a jury sua sponte as to such evidentiary matters"). And Trial Rule

42(C) provides: "The Court upon its own motion or the motion of any party for good cause shown may allow the case to be tried and submitted to the jury in stages or segments including, but not limited to, bifurcation of claims or issues of compensatory and punitive damages." Here neither party requested a limiting instruction under Evidence Rule 105 or a bifurcated trial under Trial Rule 42. Further nothing in the record demonstrates the trial court should have ordered bifurcation sua sponte.

## II. Admissibility of Prior Alcohol-Related Driving Offenses

Although evidence must be relevant to be admissible, not all relevant evidence is admissible. As we recounted earlier, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Ind. R. Evid. 403. Sims contends evidence of his two prior convictions was not admissible because their probative value was substantially outweighed by the danger of unfair prejudice. The heart of Sims' argument is that the remoteness in time of the prior offenses rendered the evidence inadmissible.

In support of his remoteness contention Sims relies on Indiana Evidence Rule 609. He argues: "Indiana recognizes that stale convictions are not indicative of a person's credibility for the purposes of impeachment. For similar reasons, convictions of reckless driving and a DUI that are thirty and seventeen years old are not so probative of state of mind to be able to overcome their unduly prejudicial effect in a case involving an intoxicated driver in a motor vehicle accident." Appellant's Br. at 4 (internal citation omitted). The Rule provides:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime must be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury.
> (b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than ten (10) years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Ind. R. Evid. 609. Sims acknowledges that the evidence was not admitted at trial to impeach his credibility. He nonetheless urges "the reasoning for not allowing the stale convictions is the same. . . . [E]vidence of the prior convictions would not be indicative of Mr. Sims' state of mind because they are far too remote in time." Appellant's Br. at 7-8.

Sims' reliance on Rule 609 is misplaced for several reasons. We confine our comments to two such reasons. First, as Sims acknowledges the Rule is applicable where a witness' credibility is being attacked. And in this instance the evidence was introduced not to attack Sims' credibility but to provide evidence of his state of mind. Thus the facts of this case along with the plain meaning of the Rule demonstrates it does not apply here. Second, contrary to Sims' argument, the restrictions the Rule places on offenses that are more than ten years old do not render the evidence inadmissible. Rather, in addition to prior notice, the Rule simply imposes the requirement that the "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Ind. R. Evid. 609(b)(i). Although worded slightly differently this requirement is essentially the same as that imposed by the rule at stake here, namely Rule 403: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . ."

Essentially, neither Rule 403 nor 609 imposes a temporal component on the admissibility of prior offense evidence. But the temporal component notwithstanding we are still left with the query of whether the probative value of the evidence is substantially outweighed by a danger of unfair prejudice. To be sure evidence of a prior conviction is certainly prejudicial. As this Court has observed "evidence of a prior conviction is as prejudicial as evidence can get . . . ." Thompson v. State, 690 N.E.2d 224, 235 (Ind. 1997). The question is whether such evidence is unfairly prejudicial.

Generally employed in the context of criminal law and procedure, Indiana Evidence Rule 404(b) provides in relevant part: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This Rule "is designed to prevent the jury from making the 'forbidden inference' that prior wrongful conduct suggests present guilt." Byers v. State, 709 N.E.2d 1024, 1026-27 (Ind. 1999). Hence in the criminal context much caution is used when exploring the circumstances under which prior offenses are introduced into evidence lest the jury infer that a defendant's past criminal act suggests present guilt. See Thompson, 690 N.E.2d at 233 ("The well established rationale behind . . . Rule 404(b) is that the jury is precluded from making the 'forbidden inference' that the defendant had a criminal propensity and therefore engaged in the charged conduct.").

But the policy rationales for excluding prior offense evidence in the criminal context and admitting such evidence in support of a punitive damages claim in the civil context are much different. Indeed they are polar opposites. That is to say unlike its criminal law counterpart, "[t]he central purpose of punitive damages is to punish the wrongdoer and to deter him from future misconduct." Crabtree ex rel. Kemp, 837 N.E.2d at 139. Admitting evidence of past similar criminal conduct allows the factfinder to determine whether defendant has learned his lesson and profited by his past experience or whether despite his past experience the defendant nonetheless engaged in a "conscious, voluntary act or omission in reckless disregard of the consequences to another party." N. Ind. Pub. Serv. Co., 790 N.E.2d at 465. Essentially, evidence of a civil defendant's past similar convictions is sought to be introduced precisely to show his proclivity to engage in the prohibited conduct.

Here, given the underlying rationale for admission of past criminal offenses, we conclude the remoteness of a prior offense does not affect the admissibility of the evidence. A 30-year old prior offense may have just as much persuasive force as a 30-day old prior offense. In sum we conclude that although evidence of Sims' prior conviction was prejudicial it was not unfairly so. In the end we are of the view that the remoteness of a prior offence is a matter of weight to be determined by the jury—not a matter of admissibility. Stated somewhat differently, the parties can argue, and the factfinder can determine, just how much weight to give a remote-in-time

criminal conviction. But the fact of an otherwise stale conviction does not render the evidence inadmissible as matter of law. In this case the trial court did not abuse its discretion in admitting evidence of Sims' 1983 and 1996 alcohol-related traffic offenses.

### III. Compensatory Damages

Sims next contends the compensatory damages awarded to Pappas is unsupported by the evidence and is excessive.[6] We afford a jury's damage awards great deference on appeal. Raess v. Doescher, 883 N.E.2d 790, 795 (Ind. 2008). "A damage award will not be reversed if it falls within the bounds of the evidence." Id. (internal quotation omitted) (citation omitted). "We look only to the evidence and inferences therefrom which support the jury's verdict, and will affirm it if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting." Id. (internal quotation omitted). However, we will find the judgment to be excessive if the amount cannot be based on anything other than prejudice, passion, partiality, corruption, or some other element of improper consideration. Parke State Bank v. Akers, 659 N.E.2d 1031, 1035 (Ind. 1995).

Sims argues the evidence establishes that Pappas' medical bills were $75,000.00 and lost wages were $4,000.00. Thus, the argument continues, the award of $1,444,000.00 must have been motivated by passion, partiality, prejudice, or some other improper consideration.

In addition to medical expenses, lost wages, and benefits up to the date of trial, which Pappas calculated totaled over $20,000.00, Pappas introduced evidence that based on his life expectancy his lost future earnings (limited to part-time work) may total over $350,000.00. In closing argument Sims' counsel requested a "minimum" of $1.2 million in damages, imploring the jury to award over $700,000.00 for pain and suffering which represented $100.00 per day

---

[6] In his Brief of Appellant Sims also argues the damages awarded to Melissa Pappas are excessive and unsupported by the evidence. Pappas counters that Sims waived this claim since he failed to specifically raise it in his Motion to Correct Error filed before the trial court. See Br. of Appellees at 21. At oral argument before the Court of Appeals, Sims acknowledged the issue is waived. See Court of Appeals Oral Arg. at 18:28-18:28. And in his Corrected Brief in Response to Petition to Transfer, Sims does not specifically address this issue. Nor do we. The issue is waived. See Henri v. Curto, 908 N.E.2d 196, 207-08 (Ind. 2009) (holding in part a claim of insufficiency of the evidence supporting a verdict "may not be initially raised on appeal in civil cases if not previously preserved in the trial court by either a motion for judgment on the evidence filed before judgment or in a motion to correct error").

from the time of the collision until the day of trial and $50.00 per day thereafter during his life expectancy.

The record shows Pappas' injuries included (among other things) a broken leg, arm, and foot/ankle. He underwent emergency surgery immediately following the collision and had a subsequent ankle surgery, after which he was immobilized and eventually able to return to work at Meijer only part-time and without benefits. The ankle injury causes Pappas constant pain, may necessitate future surgery, and has permanently altered his gait (he now walks with a limp), which will impact his mobility for the rest of his life. The jury also heard evidence that although at the time of the trial Pappas' medical bills totaled $75,000 the health care professional treating Pappas expected he would need at least two more rounds of physical therapy. Tr. at 441.

Sims counters the damages award at "nearly twenty times his medical specials of $75,000" is excessive. Appellant's Br. at 12. Sims cites evidence that Pappas' arm has a good prognosis, he may have future substantial improvement in his foot pain, and that in the future he may be able to run on flat surfaces. Id. at 13. We note that a figure representing a numerical multiple of medical specials, while perhaps a valuable tool for settlement negotiations in a personal injury case, it has little to no value to a factfinder in determining the amount of a compensatory damages award. And although counsel argued for at least $1.2 million, "the amount of damages is governed by the evidence, not by the amount requested." TRW Vehicle Safety Sys., Inc. v. Moore, 936 N.E.2d 201, 221 (Ind. 2010). The question here is what does the evidence support. By our calculation the documented evidence combined with the request for pain and suffering damages add up to just shy of $1.2 million. But the jury very well could have decided to be more generous in its pain and suffering calculation. In any event Sims' complaint concerning Pappas' future prognosis amounts to an invitation for this court to reweigh the evidence and second-guess the jury. We may not do so. The compensatory damages award fell squarely within the bounds of the evidence. Thus we decline to disturb it.

## IV. Punitive Damages

Lastly Sims contends the $182,500.00 punitive damages award is excessive. "[P]unitive damages in a proper case may be assessed by the jury within their sound discretion guided by proper instructions given by the court." Hibschman Pontiac, Inc. v. Batchelor, 362 N.E.2d 845, 849 (Ind. 1977). Nonetheless, there are constitutional considerations. Courts consider three factors in determining whether the amount of punitive damages constitutes a deprivation of property without due process in violation of the Fourteenth Amendment: (1) the degree of reprehensibility of the conduct; (2) the disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between this remedy and the penalties authorized or imposed in comparable cases. Wohlwend v. Edwards, 796 N.E.2d 781, 786 (Ind. Ct. App. 2003) (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003)). Although citing the due process clause of the Fourteenth Amendment, Sims does not meaningfully analyze these factors. Instead he argues that his inability to afford punitive damages violates his Fourteenth Amendment right to due process.

"Current law recognizes that punitive damages may serve the societal objective of deterring similar conduct by the defendant or others by way of example." Stroud v. Lints, 790 N.E.2d 440, 445 (Ind. 2003). Therefore, "if punitive damages are appropriate, the wealth of the defendant has for many years been held relevant to a determination of the appropriate amount." Id. And although "a defendant's wealth cannot justify an otherwise unconstitutional punitive damages award[,]" it is nevertheless an appropriate consideration. Id. (internal quotation omitted).

Sims' underlying argument is that he lacks the financial resources to pay the judgment imposed against him and this makes the award of punitive damages automatically excessive. See, e.g., Appellant's Br. at 18 ("[T]he $182,500 punitive damages award is excessive, particularly when also considering the compensatory damage award of $1,817,500, Mr. Sims' financial condition, and the fact that he will not be able to discharge this debt in bankruptcy."). Sims likens his situation to that of the defendant in Stroud. In that case, this Court reversed a punitive damages award of $500,000.00 that was assessed against seventeen-year-old Stroud for

12

causing a vehicle collision and permanently injuring his passenger. Stroud, 790 N.E.2d at 441-42. Stroud was sentenced to eight years in prison for his related criminal conduct and his only source of income was through work release. Id. at 446. There was evidence that he had no significant assets at the time of trial, and had no means of acquiring assets in the near future. Id. We held that the amount was excessive because it had "passed the point of deterrence and punishment long before it reached the $500,000 mark." Id. at 447.

Sims is not similarly situated. He introduced no evidence of his income, monthly living expenses, savings or other assets. The only information regarding Sims' ability to pay was that he owned real estate, that he worked at a furniture assembly job for twenty-one years, and that he planned to continue working "as long as [he was] able." Tr. at 159, 385-86. Sims introduced no evidence of the value of his property or any liens on the property, or any savings, or any outstanding debts. Indeed, Sims filed a pretrial motion in limine to exclude any evidence of his financial status, arguing it "has no relevance or materiality to any of the issues of this case, and any mention regarding same would be highly flammatory and prejudicial against [him]." Appellant's App. at 16. Although the trial court took this portion of the motion under advisement pending developments at trial, it never ruled on the motion. In any event consistent with his motion, Sims introduced no evidence of his financial status aside from his plans to continue working as long as he was able.

In essence Sims himself took wealth off the table as a factor in determining the amount of punitive damages. This is fatal to Sims' implied "I am a pauper" claim. See Fahrenberg v. Tengel, 291 N.W.2d 516, 527 (Wis. 1980) ("[T]he wealth of defendant . . . is not a significant consideration in reviewing the punitive damages on appeal because neither the plaintiff nor the defendant put in sufficient evidence to show defendant's net worth, net earnings, or financial resources."). And importantly we have held the point "settled" that a plaintiff is not "required to offer proof of the defendant's ability to pay a punitive damages award." Stroud, 790 N.E.2d at 447 (citing Hibschman Pontiac, 362 N.E.2d at 849). This is the approach the majority of other jurisdictions have taken as well. See Darcars Motors of Silver Spring, Inc. v. Borzym, 841 A.2d 828, 844 (Md. 2004) ("[A] plaintiff does not bear a burden to present evidence of a defendant's financial condition in support of its pursuit of punitive damages.") (collecting cases); accord

13

Kemezy v. Peters, 79 F.3d 33, 33-34 (7th Cir. 1996) (collecting cases). Here, if Sims wanted to present evidence and argument at trial that a punitive damages award was futile because he had no means to pay, then it was his burden to do so. He failed to carry this burden.

In Hibschman Pontiac the Court announced a "first blush" rule for determining whether a punitive damages award is too large. We declared: "Damages are not to be considered excessive unless at first blush they appear to be outrageous and excessive or it is apparent that some improper element was taken into account by the jury in determining the amount." 362 N.E.2d at 849 (alteration omitted) (citation omitted). We conclude the $182,500.00 award of punitive damages in this case passes the first blush test. Essentially we are of the view that the award is not excessive.

## Conclusion

We affirm the judgment of the trial court.

Rush, C.J., and David, Massa and Slaughter, JJ., concur.