


FILED
Apr 01 2024, 9:21 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Court of Appeals of Indiana

Ramirez J. Gomez and J & E Logistics, LLC,

Appellant-Defendants

v.

Deborah S. Cochrane,

*Appellee-Plaintiff*

---

April 1, 2024

Court of Appeals Case No.

23A-PL-1792

Appeal from the Vanderburgh Superior Court

The Honorable Gary J. Schutte, Judge

Trial Court Cause No.
82D06-1908-PL-004237

---

**Opinion by Judge Felix**
Judges Bailey and May concur.

**Felix, Judge.**

## Statement of the Case

On the morning of August 14, 2017, Deborah Cochrane was stopped in traffic in a one-lane construction zone on I-69 when Ramirez J. Gomez,[1] driving a tractor-trailer owned by J & E Logistics, LLC struck the rear of a vehicle stopped behind Cochrane, causing that vehicle to strike the rear of Cochrane's vehicle. Cochrane suffered several injuries as a result of the collision and sued Gomez and J & E Logistics (collectively, "Defendants") for negligence, seeking to recover damages for her injuries, pain, and suffering. Following trial, the jury awarded Cochrane $2.5 million in damages. Defendants subsequently filed an Indiana Trial Rule 59 motion claiming that the jury's verdict was excessive. After a hearing, the trial court denied the Trial Rule 59 motion, finding the jury's verdict was not excessive. Defendants now appeal the trial court's decision and raise one issue for our review: Whether the trial court abused its discretion when it denied the Trial Rule 59 motion.

[1] We affirm.

## Facts and Procedural History

[2] The facts most favorable to the jury's verdict are as follows.

---

[1] In Defendants' brief, they refer to Gomez as both "Joel Ramirez Gomez" and "Ramirez J. Gomez." We use the latter because it conforms to the name used by the trial court and is used by all parties on appeal.

## Collision and Immediate Aftermath

[3] Just after 7:00 a.m. on August 14, 2017, Cochrane was driving southbound on I-69 approaching the Boonville-New Harmony Road exit in Vanderburgh County, Indiana, where the road was restricted to one-lane due to construction. As Cochrane approached the exit, traffic in the construction zone slowed until it eventually came to a stop. At the same time, Gomez was driving a tractor-trailer southbound on I-69 toward the Boonville-New Harmony Road exit. Gomez had a clear line of sight all the way to the exit, and the road was dry. Gomez was travelling approximately 60 miles per hour as he was approaching the stopped traffic. Gomez failed to adequately stop his tractor-trailer and struck the vehicle stopped immediately behind Cochrane. This impact caused a chain reaction collision involving Cochrane's vehicle, which was struck from behind, forcing it into the car immediately in front of it and then westward into a ditch. The driver side and back end of Cochrane's vehicle was "substantial[ly] crush[ed]" by the collision, and her seat broke backward. Tr. Vol. II at 182–83.

[4] When first responders arrived on scene, they used the Glasgow Coma Scale to determine Cochrane's mental condition. The Glasgow Coma Scale is a set of tests designed to gauge whether a person has a brain injury; scores range from 3 to 15, with scores between 3 and 8 indicating a severe brain injury, scores between 9 and 12 indicating a moderate brain injury, and scores between 12 and 15 indicating a mild brain injury. Both times first responders administered the Glasgow Coma Scale to Cochrane at the scene, she scored an 8 overall,

with a score of 2 for eye opening, a score of 2 for verbal, and a score of 4 for motor. Cochrane's score of 2 for eye opening meant her eyes opened to responsive pain but she was not opening or moving her eyes when first responders asked to her to do so. Cochrane's score of 2 for verbal meant she was not making comprehensive sounds; that is, she was able to vocalize but not create words. Cochrane's score of 4 for motor meant she was physically responding to only pain. Based on her Glasgow Coma Scale scores, first responders intubated Cochrane—sedated her and inserted a breathing tube—on scene before transporting her to a local hospital.

[5] As a result of the crash, Cochrane had a large scalp laceration on the back of her head where the skin pulled away from the tissue; this type of injury is also known as a degloving injury. The collision also caused ligamentous injuries in Cochrane's spine and fractured four of the vertebrae in her neck and upper back. In addition, Cochrane's lungs were bruised from being intubated and placed on a ventilator for one to two days after the crash.

**Rehabilitation and Long-Term Effects of Collision-Related Injuries**

[6] On August 17, 2017, Cochrane was discharged from the hospital and admitted to a rehabilitation hospital where the admitting doctor diagnosed her with "abnormal cognition," which means Cochrane exhibited signs of abnormal thinking and abnormal brain functioning. Tr. Vol. II at 201. On September 1, 2017, Cochrane was discharged from the rehabilitation hospital. Thereafter, Cochrane received home health care therapy. Cochrane was in a neck-and-back brace 24 hours a day for three months after the crash. During this time,

Cochrane's sister, brother-in-law, and daughter transported Cochrane to medical appointments and helped with other tasks such as grocery shopping and basic household chores.

[7] Approximately three weeks after the crash, Cochrane's large scalp laceration had healed, and approximately five weeks after the crash, her pain between her shoulder blades had lessened. Notably, Cochrane could not remember events that occurred six weeks prior to and two weeks after the crash. In December 2017, Cochrane was prescribed oxycodone and hydrocodone to manage her pain. By January 2018, Cochrane had been discharged from home health care therapy and reported to one of her doctors that she was continually improving and had weaned herself off her oxycodone prescription. Additionally, Cochrane returned to work at her office job by January 18, 2018, but her work hours were limited to 2.5 hours per day. Cochrane gradually increased her working hours, and by July 18, 2018, she was working full-time again.

[8] By March 2019, Cochrane was still experiencing neck and back pain, and she still had limited range of motion. At work, Cochrane noticed that she could no longer remember how to do certain tasks she had performed many times prior to the crash, and she could also no longer remember details about clients. She required assistance to do physical tasks she could do independently before the collision. These issues made Cochrane feel "like I wasn't totally doing my job as well as I should have been doing." Tr. Vol. III at 110. As a result, Cochrane retired two years after returning to full time work, which was sooner than she would have retired if not for the crash and her injuries.

[9] Although there was at least one doctor's visit after the collision at which Cochrane rated her pain as a 1 out of 10, she often rated her pain between a 6 and an 8 out of 10. Cochrane's primary care provider described her as "resilient" and not "a complainer." Tr. Vol. II at 244. Cochrane also has a strong aversion to using narcotic pain medication, especially at high doses and for extended periods of time. Consequently, it was not until late 2022 that Cochrane told her primary care provider that she could no longer handle her pain level and was willing to try a higher dose of her prescribed narcotic pain medication. Cochrane will likely be on narcotic pain medication for the rest of her life. Cochrane's chronic pain also puts her at increased risk of depression and anxiety.

[10] As a result of her injuries, Cochrane has permanently reduced range of motion and chronic pain. Cochrane also takes a narcotic pain medication and a strong muscle relaxer at night so she can sleep continuously for several hours at a time, but even with those medications she is not able to get a full night's sleep due to pain and tightness in her neck and shoulders. On average, Cochrane sleeps for only four to five hours in her bed before she has to move to a recliner due to her pain. Cochrane's primary care physician does not believe Cochrane's sleep problems will ever improve.

Likewise, Cochrane's four fractured vertebrae have continued to deteriorate since the crash. Cochrane's vertebral and ligament injuries resulted in a significant alteration in the anatomy of her spine and place her at an increased risk of additional compression fractures and disc degeneration. In addition,

more than five years after the crash, Cochrane was experiencing cognitive problems, namely, "word finding" and "compared memory." Tr. Vol. II at 217–18. Cognitive tests administered annually by Cochrane's primary care provider revealed Cochrane has a mild neurocognitive impairment.

[11] Since the collision, basic household tasks such as laundry and vacuuming are more difficult for Cochrane than before. Cochrane cannot sit for more than one hour at a time. Because of this and her now limited range of motion, driving is also problematic for Cochrane. Similarly, Cochrane cannot be on her feet continuously for more than 60 to 75 minutes without needing to stop and rest. There are also many other activities that provided Cochrane with a sense of fulfillment and joy before the crash in which she can no longer participate.

**Litigation**

[12] On August 5, 2019, Cochrane sued Defendants for negligence, requesting damages for personal injuries, medical expenses, lost wages, and pain and suffering. Extensive discovery regarding Cochrane's injuries ensued, including several medical examinations.

[13] In August 2022, Dr. Polly Westcott, who was retained by Cochrane, reviewed Cochrane's medical records, interviewed Cochrane and her daughter, and conducted a neuropsychological evaluation of Cochrane. The testing revealed that Cochrane had difficulties with frontal lobe functioning, also called executive functioning, such as organization, planning, time management, problem solving, and processing conversations. Dr. Westcott ultimately

concluded that Cochrane had sustained a traumatic brain injury from the collision and was suffering from adjustment disorder, that is, Cochrane was having difficulty with anxiety and depression due to her inability to function at her pre-crash level of cognition. According to Dr. Westcott, Cochrane will never recover the brain function she lost due to the crash, and Cochrane is now two to three times more likely to suffer from "brain base diseases" such as Alzheimer's disease and Parkinson's disease because "her brain is weaker than it was before." Tr. Vol. III at 70. Dr. Westcott also determined that Cochrane is more susceptible to developing a depression or an anxiety disorder.

[14] In September 2022, Dr. Edward Negovetich, who was retained by Cochrane, conducted an "independent medical exam" of Cochrane based on her medical records and an in-person examination. Tr. Vol. II at 213. Dr. Negovetich determined Cochrane likely suffered a concussion and brain injury as a result of the crash based on her Glasgow Coma Scale scores, abnormal cognition diagnosis, post-traumatic amnesia, and large scalp laceration.

[15] In December 2022, Dr. Corby Bubp, who was retained by Defendants, conducted an independent medical exam of Cochrane based on an in-person examination and a review of her medical records, including Dr. Westcott's report from her examination of Cochrane. Dr. Bubp concluded in relevant part that Cochrane had suffered a concussion or mild traumatic brain injury as a result of the crash.

[16] Beginning on February 14, 2023, the trial court held a four-day jury trial. During closing argument, Cochrane requested $3.55 million in damages, and Defendants suggested that the jury should award Cochrane between $250,000 and $350,000. The jury determined Defendants were 100 percent at fault for the collision and awarded Cochrane $2.5 million in damages.

[17] On March 20, 2023, Defendants filed a Trial Rule 59 motion to correct error, grant remittitur, or order a new trial based on their belief that the jury award was excessive. After a hearing, the trial court denied the Trial Rule 59 motion. This appeal ensued.[2]

## Discussion and Decision

### The Trial Court Did Not Abuse Its Discretion by Denying the Trial Rule 59 Motion Because the Jury's Damages Award Is Not Excessive

[18] On appeal, Defendants argue that the trial court abused its discretion when it denied the Trial Rule 59 motion because the jury's damages award is clearly excessive. We generally review "a trial court's ruling on a motion to correct error for an abuse of discretion." *Sims v. Pappas*, 73 N.E.3d 700, 705 (Ind. 2017) (quoting *Santelli v. Rahmatullah*, 993 N.E.2d 167, 173 (Ind. 2013)). "An abuse of discretion occurs when the trial court's decision is clearly against the logic

---

[2] Due to several instances of both parties failing to provide citations to the record for statements of fact in the Argument sections of their briefs, which is required by Indiana Appellate Rule 46(A)(8)(a), we request counsel comply with Appellate Rule 46 in the future because such compliance aids our review, *see Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)).

and effect of the facts and circumstances before it." *Id.* (quoting *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011)).

We give "great deference" to a jury's damage award. *Sims*, 73 N.E.3d at 709 (citing *Raess v. Doescher*, 883 N.E.2d 790, 795 (Ind. 2008)). "We look only to the evidence and inferences therefrom which support the jury's verdict," and we "will affirm it if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting." *Id.* (quoting *Raess*, 883 N.E.2d at 795). That is, we will not reverse a damage award so long as "it falls within the bounds of the evidence." *Id.* (quoting *Raess*, 883 N.E.2d at 795). However, if the party challenging the award demonstrates that it "cannot be based on anything other than prejudice, passion, partiality, corruption, or some other element of improper consideration," then the award is considered "excessive." *Id.* (citing *Parke State Bank v. Akers*, 659 N.E.2d 1031, 1035 (Ind. 1995)).

Here, Cochrane's claims were based in negligence, so the reasonableness of the damages the jury awarded her is determined by the reasonable compensation standard.

> Damages in negligence actions are awarded to compensate the injured party fairly and adequately for the loss sustained. *Hi-Tec Properties, LLC v. Murphy*, 14 N.E.3d 767, 775 (Ind. Ct. App. 2014) (citing *Bader v. Johnson*, 732 N.E.2d 1212, 1220 (Ind. 2000)), *trans. denied.* The person injured by the negligence of another is entitled to reasonable compensation. *Id.* Reasonable compensation refers to an amount that would reasonably compensate the plaintiff for bodily injury and for pain and

> suffering and also takes into account past, present, and future
> expenses reasonably necessary to the plaintiff's treatment. *Id.* It
> also includes financial losses suffered or to be suffered by the
> plaintiff as a result of the inability to engage in his or her usual
> occupation. *Id.* at 775 n.5.

*Menard, Inc. v. Terew*, 210 N.E.3d 833, 840 (Ind. Ct. App.), *trans. denied*, 217
N.E.3d 1242 (Ind. 2023).

[21] Defendants specifically contend that the jury award here violates the reasonable compensation standard because it "goes well beyond providing reasonable compensation to Ms. Cochrane for her injuries," Appellants' Br. at 28, and thus was "not based on a 'reasoned assessment' of the evidence," *id.* (quoting *Terew*, 210 N.E.3d at 840). However, the evidence at trial reveals that Cochrane suffered severe injuries and long-lasting pain as a result of the collision. Cochrane sustained head trauma in the crash, resulting in diminished executive functioning and an increased risk for brain diseases such as Alzheimer's and Parkinson's. Four of Cochrane's vertebrae were fractured in the collision, resulting in Cochrane wearing a neck-and-back brace for three months, permanent alterations to her spinal anatomy, and an increased risk for other spinal injuries and diseases such as disc degeneration. Furthermore, Cochrane presented evidence that she was in good physical condition before the collision and that she was limited in her ability to perform physical activities (such as lawn maintenance, household chores, driving, and walking) after the collision. Additionally, Cochrane presented evidence that she continues to experience

pain in her neck, back, and shoulders and that she has to take prescription pain medication and muscle relaxers to control the pain.

[22] Defendants' challenge to the jury's damages verdict is essentially that the jury assigned too high of a value on what it will take to compensate Cochrane for her injuries and pain and suffering. Such a challenge is merely a request to reweigh the evidence and reassess witness credibility, which we cannot do. *See Sims*, 73 N.E.3d at 709 (citing *Raess*, 883 N.E.2d at 795). We also decline Defendants' invitation to conduct a comparative analysis of jury verdicts in other similar cases for the reasons thoroughly addressed in *Ritter v. Stanton*. *See Ritter v. Stanton*, 745 N.E.2d 828, 849–50 (Ind. Ct. App. 2001) (declining to conduct a comparative analysis for a $55 million compensatory damages award), *superseded by statute on other grounds*. Because there is evidence in the record that supports the jury's damages award, we will not disturb that award on appeal. As such, the trial court did not abuse its discretion by denying Defendants' Trial Rule 59 motion, and we affirm that decision.

[23] Affirmed.

Bailey, J., and May, J., concur.

ATTORNEYS FOR APPELLANT
Matthew R. Gutwein
Alexander J. Pantos

DeLaney & DeLaney LLC
Indianapolis, Indiana

Matthew J. Jankowski
Kopka Pinkus Dolin PC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

M. Michael Stephenson
Brady J. Rife
Stephenson Rife LLP
Shelbyville, Indiana

Timothy J. Hambidge
Foster, O'Daniel, Hambidge & Lynch, LLP
Evansville, Indiana